# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 16-60008

————————

United States Court of Appeals
Fifth Circuit

**FILED**
November 4, 2016

Lyle W. Cayce
Clerk

In Re: In the Matter of the Complaint of C.F. Bean L.L.C., as Owner Pro Hac Vice and Operator, and Bean Meridian L.L.C., as the Record Owner, of the Barge Bean 20, Oficial No. 627225, Praying for Exoneration from or Limitation of Liability,

C.F. BEAN L.L.C., as Owner Pro Hac Vice and Operator of the Barge Bean 20, Official No. 627225; BEAN MERIDIAN L.L.C., as the Record Owner, of the Barge Bean 20, Official No. 627225; ARCHER WESTERN CONTRACTORS, L.L.C.,

> Plaintiffs–Appellants,

v.

SUZUKI MOTOR CORPORATION,

> Defendant–Appellee.

————————————

JERRIE P. BARHANOVICH, etc.,

> Plaintiff,

v.

C.F. BEAN, L.L.C.; BEAN MERIDIAN, L.L.C.; ARCHER WESTERN CONTRACTORS, L.L.C.,

> Defendants–Third-Party Plaintiffs–Appellants,

No. 16-60008

v.

SUZUKI MOTOR CORPORATION,

Third-Party Defendant–Appellee.

_____

Appeals from the United States District Court
for the Southern District of Mississippi

_____

Before JONES, DENNIS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This appeal involves a third-party complaint alleging maritime products liability. In 2012, Mark Barhanovich was killed in coastal waters south of Biloxi, Mississippi, when the Suzuki outboard engine on his fishing boat struck an underwater dredge pipe, flipped into his boat, and struck him. Barhanovich's estate filed claims in federal district court against C.F. Bean, LLC, Bean Meridian, LLC, and Archer Western Contractors, LLC (collectively, "Bean"), which were responsible for dredging operations in the area. Bean ultimately settled Barhanovich's claims, and C.F. Bean, LLC pled guilty to one count of misconduct or neglect of ship officers in a criminal proceeding related to the same accident.

While Barhanovich's claims were pending, Bean filed a third-party complaint against Suzuki Motor Corporation ("SMC"), among others. After Barhanovich's claims were settled, the district court excluded expert testimony put forth by Bean, and granted SMC's motion for summary judgment against Bean. On appeal, Bean argues that the district court erred in: (1) excluding Bean's original expert report; (2) excluding Bean's second expert report; (3)

2

No. 16-60008

relying upon Bean's criminal proceeding to decide civil liability issues; (4) denying Bean's motion to conduct certain testing on the motor involved in the accident; (5) failing to apply the superseding cause doctrine; and (6) holding that Bean cannot meet its summary judgment burden without expert testimony. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2012, Barhanovich was operating a recreational fishing boat in the waters south of Biloxi, Mississippi, when his boat's SMC-made outboard motor struck a submerged dredge pipe. This dredge pipe was owned by Bean Meridian, LLC and operated by C.F. Bean, LLC pursuant to a subcontract with Archer Western Contractors, LLC. The swivel bracket on the motor broke as a result of this collision, causing the motor to rotate up into the boat, where it struck and fatally injured Barhanovich. In 2013, Bean filed a maritime limitation action under 46 U.S.C. § 30511, seeking to limit its liability for Barhanovich's death. Shortly thereafter, Barhanovich's estate sued Bean for wrongful death. These cases were subsequently consolidated.

In May 2014, Bean filed a third-party complaint against SMC and other third-party defendants, including Suzuki Motor America Inc. ("SMAI"). Bean's claims against the Suzuki entities sought indemnity or contribution based on products liability, sounding in both negligence and strict liability theories. Bean subsequently amended this complaint, most recently in October 2014. SMC was properly served in December 2014, and filed its answer in January 2015. The district court dismissed Bean's claims against the other third-party defendants, leaving SMC the only remaining third-party defendant in this case.

The district court issued a series of case management orders setting out discovery deadlines. The final deadline for Bean's initial designation of experts

No. 16-60008

was October 20, 2014. SMC then had until November 21, 2014, to designate its experts, and Bean had until December 5, 2014, to designate rebuttal experts. Bean timely designated Edward Fritsch as its mechanical engineering expert in October 2014, but did not designate a rebuttal expert. SMC itself never formally designated an expert; instead, it adopted SMAI's timely expert designation when it served its initial disclosures in January 2015.

Third-party discovery continued until August 1, 2015. On July 9, 2015, SMC moved for summary judgment, and moved to strike Fritsch's expert report and exclude his testimony. In its response to SMC's motion to strike, Bean included a "supplemental" report by Fritsch dated July 15, 2015. In its reply, SMC asked that the court also exclude this second report as untimely. In September 2015, Bean settled with Barhanovich's estate. That same month, C.F. Bean, LLC pled guilty to one count of misconduct or neglect of ship officers under 18 U.S.C. § 1115 in a criminal proceeding related to the Barhanovich accident. *United States v. C.F. Bean, LLC*, No. 1:15-cr-71 (S.D. Miss. Nov. 3, 2015). On November 5, 2015, Bean filed a "motion in limine" seeking to conduct additional testing on the SMC motor involved in the accident. The district court understood Bean's motion as a request to reopen discovery.

On November 16, 2015, the district court granted SMC's motion to strike both of Fritsch's expert reports and exclude his testimony at trial. The court also denied Bean's motion for additional testing. Bean moved for reconsideration of these decisions, but the district court denied that motion. The court then granted summary judgment against Bean, concluding that Bean could not establish a genuine issue of material fact regarding its claims against SMC without expert testimony. This appeal followed.

## II. STANDARD OF REVIEW

This case arose in admiralty. Therefore, the district court had jurisdiction under 28 U.S.C. § 1333. We have jurisdiction to review the district

4

No. 16-60008

court's final judgment under 28 U.S.C. § 1291. This final judgment incorporated the district court's exclusion of Bean's expert reports and testimony, denial of Bean's motion for additional testing of the motor, and grant of summary judgment against Bean.

We review a district court's exclusion of expert testimony for abuse of discretion. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996). We give the district court "wide latitude in determining the admissibility of expert testimony" under Federal Rule of Evidence 702, and its "decision will not be disturbed on appeal unless 'manifestly erroneous.'" *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (quoting *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995)). Additionally, we consider four factors to determine whether a district court abused its discretion by excluding expert testimony as untimely: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

We review de novo a district court's grant of summary judgment. *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). Just as the district court must, we view "all facts and evidence in the light most favorable to the non-moving party." *Id.* Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

No. 16-60008

Finally, we review a district court's decision not to reopen discovery for abuse of discretion. *Marathon Fin. Ins., RRG v. Ford Motor Co.*, 591 F.3d 458, 469 (5th Cir. 2009). Our standard of review in these cases "poses a high bar; a district court's discretion in discovery matters will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Id.* (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006)).

### III. DISCUSSION

We affirm the district court's exclusion of Fritsch's first expert report. However, we reverse the district court's exclusion of Fritsch's second expert report, notwithstanding its untimeliness. Because the district court ruled that Bean could not defeat summary judgment without expert testimony, the district court's grant of summary judgment is also reversed. Finally, we affirm the district court's denial of Bean's motion to conduct additional testing on the motor. On remand, however, we encourage the district court to consider whether to reopen discovery to allow (1) SMC to adequately respond to Fritsch's second expert report and (2) Bean to test the motor. The district court should also consider lesser sanctions for Bean's untimeliness, such as costs and attorneys' fees for SMC's additional discovery.

### A.    Bean's First Expert Report

The district court excluded Bean's first expert report because it found the report insufficient to support Bean's products liability claims against SMC. Specifically, the district court found that Fritsch's opinions in his initial report "ma[d]e no substantive reference to the design or warnings associated with the Suzuki motor." *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (explaining that Federal Rule of Civil Procedure 702 requires expert reports to be relevant to facts at issue). Bean argues that the first report did address the defective nature of SCM's motor, and points to where the original report stated: "But for a structural failure of the swivel bracket of the Suzuki

outboard motor on Mr. Barhanovich's boat, the motor and its spinning propeller would not have moved into the boat's occupant space and would not have injured or killed Barhanovich." This opinion merely stated the obvious: that the swivel bracket broke and Barhanovich died as a result. Moreover, the first report—the purpose of which was "to estimate the boat impact speed that would have been required to produce the type of motor damage which occurred in the mishap"—did not relate the motor's defective nature to the data discussed therein. At best, Bean's defect claim was "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). A district court does not abuse its discretion by excluding this kind of conclusory opinion. *See, e.g.*, *Boyd v. State Farm Ins.*, 158 F.3d 326, 331 (5th Cir. 1998) (excluding an expert's opinion that "offers nothing more than [an] unsupported conclusion"). Therefore, we affirm the district court's exclusion of Bean's first expert report.

## B.    Bean's Second Expert Report

The district court excluded Bean's second expert report as untimely. This second report, also prepared by Fritsch, is dated July 15, 2015. It was attached as an exhibit to Bean's opposition to SMC's motion to strike the first expert report. At the earliest, Bean submitted this report over seven months after the deadline for designating rebuttal experts, and just two weeks before the close of discovery for third-party claims. Bean raises two arguments for admitting this second report. First, Bean argues that the report was merely supplementary, and therefore timely under Federal Rule of Civil Procedure 26(e). Second, Bean argues that even if the report was not supplementary, the district court abused its discretion by excluding it. We address both arguments in turn.

The district court correctly held that Bean's second expert report did not merely supplement the first. Federal Rule of Civil Procedure 26(e) requires

parties to supplement previous disclosures if they learn that such disclosures are incorrect or incomplete. This duty extends to information included in expert reports and given during expert depositions. Fed. R. Civ. P. 26(e)(2). Parties must make these supplemental expert disclosures by the time Rule 26(a)(3) pretrial disclosures are due. *Id.* However, supplemental "disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club*, 73 F.3d at 571. Initial expert disclosures must be "full and complete." S.D. Miss. Civ. R. 26(a)(2).

Bean argues that Fritsch's opinions in the second report "merely expanded on" his earlier opinion that the motor spun up into the boat due to a structural failure of the swivel bracket. If so, the first report was far from "full and complete": it did not even mention whether the motor suffered from any kind of defect.[1] The second report, by contrast, clearly stated that SCM "knew or should have known" of the motor's "potential hazard" and "fail[ed] to provide adequate warnings"; that the motor was "an unreasonably dangerous product"; and that "a design change was both technologically and economically feasible." These opinions clearly relate to Bean's negligence, failure to warn, and design defect theories.

Fritsch based the conclusions in his second report primarily on documents and deposition testimony provided by SMC. These materials described "driftwood tests" conducted by SMC in 2003. In these tests, an SMC

---

[1] This is not to suggest that Fritsch could have provided a defect opinion in the first report. At the time, he knew little more than the mere fact of the accident, and his experiment failed to replicate the kind of catastrophic break that occurred in Barhanovich's swivel bracket. Fritsch had not been able to test the subject motor and did not yet have access to SCM's "driftwood tests" (discussed below). Under these evidentiary constraints, it would have been difficult for Fritsch to establish either negligence or an unreasonably dangerous defect—of design, manufacturing, or failure to warn. *See generally* Restatement (Second) of Torts § 402A (Am. Law Inst. 1975).

No. 16-60008

motor would hit a stationary object (driftwood) at various speeds up to fifty kilometers per hour (thirty-one miles per hour). At lower speeds, a shock-absorbing mechanism blunted the force of impact. This mechanism (involving rods, cylinders, and a piston) allowed the motor to safely rotate backwards to a certain degree, without breaking the swivel bracket. Under some conditions, however, the swivel bracket did break or crack at higher speeds. These tests, as well as other technical reports produced by SMC, suggested that the swivel bracket could break at speeds above thirty-one miles per hour. Beyond this point, the shock-absorbing mechanism could be exhausted, meaning that the motor had rotated backwards to its maximum safe extent. SMC's deposition also revealed another accident in which a Suzuki motor hit a stationary object, rotated up into the boat, and killed an occupant. Fritsch stated that there was an economically feasible alternative that would lessen this hazard: to thicken the swivel bracket, which SMC did for later models that featured greater horsepower. Fritsch also revised his estimate of how fast Barhanovich's boat had to be travelling in order to produce the catastrophic break, from twenty-eight miles per hour (determined experimentally as described in the first report) to thirty-five miles per hour (determined using SMC's data as well as his own experimental results). Apart from this revision to the boat's speed, the analysis and opinions in the second report were largely new rather than supplementary. For this reason, the district court did not err in finding that the second report was not supplementary under Federal Rule of Civil Procedure 26(e). Thus, Bean's second expert report was in fact untimely.

The district court's choice of sanction, however, constituted an abuse of discretion. When a party fails to disclose information required by Federal Rule of Civil Procedure 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district

court may order alternative sanctions as well, such as awarding costs and attorneys' fees to the other parties. Fed. R. Civ. P. 37(c)(1)(A)–(C). We consider four factors to determine whether a district court abused its discretion by excluding testimony as a sanction for violation of a discovery order: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman*, 893 F.2d at 791. Under the particular circumstances of this case, these factors suggest that the district court abused its discretion by excluding Bean's second expert report for untimeliness.

Under the first factor, Bean provides a reasonable explanation for failing to disclose Fritsch's opinions by the expert disclosure deadline. The district court, and SMC on appeal, focused on why Bean failed to request an extension of the expert disclosure deadline. Bean presents no answer to this question. Instead, Bean focuses on why it could not have submitted the second report by the expert disclosure deadline. Bean explains that it could not obtain discovery from SMC until SMC answered the third-party complaint in January 2015, well beyond the deadline for expert disclosures. The driftwood tests, technical reports, and deposition testimony—on which Fritsch based his second report—were all unavailable in October 2014, when Bean's initial expert disclosures were due.

Bean's explanation for its delay in disclosing Fritsch's defect opinions is reasonable. Parties are not generally expected to disclose expert opinions before discovery commences. Indeed, Fritsch based his second report in part on information—particularly the driftwood tests—that was not available to him before discovery. So we cannot say that Fritsch acted unreasonably by waiting to form opinions about the defective nature of SMC's motor until receiving discovery from SMC. In addition, the district court made no finding of bad faith

No. 16-60008

on Bean's part. *Cf. Verzwyvelt v. St. Paul Fire & Marine Ins.*, 204 F.R.D. 309, 311 (W.D. La. 2001) (holding that exclusion was inappropriate in part because defendants showed "a lack of organization" but "no bad faith" in failure to timely disclose expert report). Neither has Bean repeatedly caused delay in this litigation. *Cf. Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380–81 (5th Cir. 1996) (dilatory tactics weighed against relief on appeal for proponent of excluded evidence).

To be sure, Bean's failure to request an extension of the expert disclosure deadline does injure its argument. *See, e.g.*, *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) (failure to request an extension of expert disclosure deadline in trial court weighed against proponent of excluded evidence on appeal); *Barrett*, 95 F.3d at 381 (same). In Bean's defense, however, it did timely designate Fritsch as an expert; the first report was simply incomplete. *Cf. Geiserman*, 893 F.2d at 789 (appellant did not designate any expert witness until after deadline). On balance, Bean's explanation weighs in favor of reversing the district court.

Under the second factor, Bean's second expert report and Fritsch's testimony were important to Bean's case. In fact, from the district court's perspective, expert testimony in this case was critical: the court granted summary judgment because Bean lacked admissible expert testimony. We have reversed the district court in several other cases where the excluded testimony is similarly essential. *See, e.g.*, *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707–08 (5th Cir. 2007); *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993); *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981). *But see Geiserman*, 893 F.2d at 791 (noting that the significance of the excluded testimony was "so much the more reason to be sure its introduction was properly grounded").

11

No. 16-60008

This case differs from others where we upheld exclusion of a party's expert in part because that party could call other experts to testify on a particular issue. For example, in *Metro Ford Truck Sales*, we noted that only one of the appellant's expert witnesses was excluded, and the appellant in that case did not even claim that exclusion "impacted its summary judgment positions." 145 F.3d at 324 n.6. Likewise, in *1488, Inc. v. Philsec Investment Corp.*, 939 F.2d 1281 (5th Cir. 1991), we observed that "[e]nforcement of the district court's [scheduling] order did not leave the defendants without an expert witness on the issue of valuation." *Id.* at 1288. Here, by contrast, Fritsch was Bean's only expert who could testify about a defect, and his testimony was crucial to Bean's case. The importance of Fritsch's report and testimony weigh in favor of reversing the district court.

Under the third factor, admitting Bean's second expert report and allowing Fritsch to testify would prejudice SMC. Bean submitted this report near the end of the discovery period, leaving SMC little opportunity to examine and rebut Fritsch's new opinions. To properly rebut and re-depose Fritsch would cost substantial time and expense to SMC. On the other hand, Bean submitted its second expert report before the discovery deadline, and several months before trial was scheduled. This was not a case of one party ambushing the other with undisclosed expert opinions at trial. *Cf. Miksis v. Howard*, 106 F.3d 754, 760 (7th Cir. 1997) (striking expert disclosures submitted three days before trial). Nevertheless, the prejudice to SMC weighs against reversing the district court.

Under the fourth factor, a continuance would have sufficed to cure prejudice to SMC. This Court has repeatedly stated that "a continuance is the 'preferred means of dealing with a party's attempt to designate a witness out of time.'" *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998) (quoting *Bradley v. United States*, 866 F.2d 120, 127 n.11 (5th Cir.

12

1989)). SMC itself requested a continuance as an alternative to excluding Bean's second expert report. A continuance would allow SMC to produce a rebuttal report and re-depose Fritsch. The suitability of a continuance to cure prejudice to SMC weighs in favor of reversing the district court.

Notwithstanding the wide latitude we give district courts in deciding discovery matters, excluding Fritsch's second report and his testimony was not the appropriate sanction in this case. Bean's explanation for not submitting a complete expert report by the disclosure deadline is reasonable. Although Bean cannot explain why it did not move to extend the deadline, there is no indication of bad faith on Bean's part. The expert report and testimony were essential to Bean's case. And a continuance would cure much of the prejudice to SMC from Bean's late disclosure. On these facts, excluding critical expert testimony was disproportionately harsh for what amounts to failure to request an extension of the expert disclosure deadline. More appropriate sanctions include allowing SMC to re-depose and rebut Fritsch, and awarding SMC costs and attorneys' fees for this additional discovery.

## C.    Summary Judgment

The district court granted summary judgment against Bean after excluding Fritsch's expert reports and testimony. In fact, Bean's lack of admissible expert testimony was the ground on which the court granted summary judgment. Specifically, the court found that "the nature of Bean's claim against Suzuki . . . implicates scientific, technical, or other specialized knowledge, and that no reasonable trier of fact could find for Bean and Archer Western on their products liability claim against Suzuki in the absence of such expert testimony." Because we reverse the district court's exclusion of Fritsch's second expert report and testimony, we must also reverse the court's summary judgment against Bean. We need not address Bean's other arguments for reversal of summary judgment.

**D.    Bean's Motion for Additional Testing of the Motor**

Finally, the district court denied Bean's "motion in limine" for additional testing of Barhanovich's motor. The district court understood Bean's request as a motion to reopen discovery. Bean filed this motion on November 5, 2015, at which time the motor was in the custody of the U.S. Coast Guard. The Coast Guard had taken control of Barhanovich's boat shortly after the accident. Bean argues that it repeatedly requested access to test the motor, which the Coast Guard repeatedly denied due to the parallel criminal investigation. That investigation ended on November 3, 2015, when judgment was entered following C.F. Bean, LLC's guilty plea. Judgment in a Criminal Case, *C.F. Bean, LLC* (No. 1:15-cr-71). Bean seeks to test the strength of the subject swivel bracket to help determine whether it suffered from a design or manufacturing defect.

Bean did not make this request until several months after the close of discovery, and only a few weeks before the trial was scheduled to begin. Although it may have been futile for Bean to make this request while the criminal investigation was ongoing, Bean could have requested a stay of its civil case instead. Under these circumstances, the district court did not abuse its discretion by denying Bean's eleventh-hour motion. *See, e.g.*, *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 278 (5th Cir. 2010) (affirming district court's denial of request to re-depose a witness where the request was made after the court granted summary judgment). On remand, however, the district court should consider whether to reopen discovery for the limited purpose of allowing (1) SMC to rebut and re-depose Fritsch and (2) Bean to test the motor. The district court should also consider awarding costs and attorneys' fees to SMC for its additional discovery.

No. 16-60008

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

No. 16-60008

JONES, Circuit Judge, dissenting:

I respectfully dissent from the panel majority's holding (and only this holding) that the district court abused its discretion by excluding Bean's untimely second expert report. The panel majority states the correct legal standards but, in my opinion, misapplies them to the case at hand. The upshot of the majority's reasoning is to revise and extend the district court's already generous pretrial discovery order.

Placing the court's exclusion order in the litigation timeline is critical. On September 16, 2012, Mark Barhanovich died after his boat struck a dredge pipe operated by Bean and the boat's Suzuki motor catapulted into the boat and hit him. Six months later, Bean filed a limitation-of-liability action, and Barhanovich's estate sued Bean. After consolidating the cases, the district court granted Bean leave on April 23, 2014, to file a third-party complaint against Suzuki Motor Corporation (SMC). Later in 2014, Bean filed an amended third-party complaint against SMC. Bean's complaint demanded indemnification from SMC based on a theory of products liability. On January 2, 2015, SMC filed its answer.

The case was initially set for trial in August 2015, but the district court granted the parties' requests for extension of discovery-related deadlines six different times, which delayed both the general discovery deadline and the trial date. The court entered its initial case management order on October 16, 2013, scheduling the case for trial on August 3, 2015. On the parties' requests, it then amended the order on July 17, 2014; August 25, 2014; December 11, 2014; February 4, 2015; March 18, 2015; and July 10, 2015—each time extending discovery-related deadlines. As a result, the overall discovery deadline was August 1, 2015, and the trial was set to occur during a three-week term of court

16

beginning November 30, 2015. Bean did not settle with the Barhanovich family until September 2015.

In the meantime, Bean needed experts to prove up its products-liability claims against SMC. After the district court granted the parties' requests for extensions of the expert-designation deadlines, Bean's initial expert-designation deadline was October 20, 2014, and its rebuttal expert-designation deadline was December 5, 2014. Bean timely designated Edward Fritsch as its expert; his report largely took to task Barhanovich for piloting his boat at an excessive speed. As the panel majority note, Fritsch's initial report "was far from 'full and complete'" and "did not even mention whether the motor suffered from any kind of defect"—the core of a products-liability case. Despite the inadequacy of Fritsch's initial report, and despite the district court's demonstrated willingness to extend expert-designation deadlines, Bean sought no extension of the October and December deadlines.

Then, between July 15 and 30, 2015—two and a half years after Bean initiated this suit, nine months after Bean's expert-designation deadlines passed, and mere days before the August 1 discovery deadline—Bean made its move. On July 30, Bean filed a second report by Fritsch dated July 15 in opposition to SMC's motion for summary judgment. As the panel majority agree, Fritsch's second report contained "largely new" opinions that "clearly relate to Bean's negligence, failure to warn, and design defect theories." The district court struck this report because it was not filed by Bean's expert-designation deadlines, "and despite seeking and receiving numerous extensions of other deadlines in this case, Bean has never requested an extension of the deadline for submission of rebuttal experts." The district court emphasized that "Bean was well aware of the nature of its claims against Suzuki long before these deadlines expired," and yet, "Bean has proffered no

good explanation for why it failed to timely request that its expert disclosure deadline be continued, or that the deadline for submitting rebuttal experts be extended."   In light of Bean's failure to explain its errors, the district court declined to permit Bean's "ambush" of SMC and struck the report.

The question presented here is whether the district court's exclusion of Fritsch's untimely second report was "a clear abuse of discretion."  *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).  The answer to this question turns in large part on Bean's explanation for its failure timely to disclose Fritsch's second report.  *See id.* at 791.  In my view, neither Bean's proffered explanation nor the record can support the holding that the district court clearly abused its discretion.

Bean's sole excuse for its untimely submission is a red herring.  Bean asserts that it did not obtain the discovery documents that undergird Fritsch's second report until several months after the expert-designation deadlines passed, and without those documents, it was impossible to offer an expert report concerning the Suzuki motor.  That conclusion does not follow from Bean's premise.  At most, its premise shows only that at the time of its initial deadlines, Bean could not offer Fritsch's second report.  The documents' initial unavailability, however, says nothing about Bean's subsequent delay in disclosing a report based on later-acquired documents or Bean's failure to request deadline extensions.  Bean thus ignores the central issue in this case, which is whether the district court abused its discretion by excluding Fritsch's second report, not at the time of Bean's initial expert-designation deadlines but instead after a subsequent nine-month delay.

On this question, three reasons can be elicited from the record in support of the district court's discretionary decision to exclude the second report.  To begin, even viewed in its most favorable light, Bean's argument concerning the

No. 16-60008

unavailability of SMC's documents seems disingenuous. Bean had obtained the SMC documents on which Fritsch's second report was based nearly four months before it produced the report to SMC and the court. Bean's opening brief admits that "Suzuki . . . provide[d] full responses [to Bean's discovery requests] . . . [on] April 6, 2015." Bean did not file Fritsch's second report until July 30, 2015. The four-month time gap speaks for itself.

Moreover, the relationship between the documents disclosed on April 6 and the report filed on July 30 is unmistakable. Fritsch's report emphasizes that "[t]he principal purpose of this report is to comment on the Suzuki documents that have been produced in the discovery process since October 2014." He compared his current analysis to his analysis "[p]rior to Suzuki's production of its design and test documents." Fritsch highlighted at least six documents that he found particularly important to his analysis:

- Limited Warranty for 2001 and Later Four Stroke Models, which "specifically lists striking submerged objects as one of the situations not covered by the warranty."

- Test Standard for Running on Driftwood, which "describes a test protocol by which a Suzuki motor, mounted on a test boat, is subjected to an impact with a moored, floating wooden log of a specified standard length and diameter."

- Test report SES T 8561, which "describes a series of driftwood tests conducted on the DF225/250 outboard motor during the period from July 1 to August 1, 2003."

- A "technical reporting memo," which "indicates that the shock blow setting was 515.4 kgf/cm$^2$ (7,330 psi)."

- Engineering Change Notice 93J-069, which Fritsch described as "[a] document of significant utility."

- Engineering Change Notice 93J-0668, which Fritsch described as "[a]nother document of interest" and "notable."

Finally, after surveying the documents, the report transitions to a heading entitled "Calculations Using Information from Suzuki's Documents." That section emphasizes the importance of these documents:

> The documents produced by Suzuki provide a wealth of dimensional information on the DF225 motor as well as data on the performance of that motor in the driftwood impact tests conducted by Suzuki in 2003. That dimensional information and test data have provided me with inputs for a variety of calculations that are relevant to quantify general performance characteristics of the middle unit of the DF225 motor and the probable behavior of that unit in the subject accident. On the pages to follow, a series of seven figures (Figures 6 through 12) are presented to summarize the results of those calculations.

In short, Fritsch's second report was based on documents that Bean acquired nearly four months before it filed Fritsch's report with the district court.

It is thus hard to take seriously Bean's argument that it could not disclose a report without the necessary supporting documents, when even after receiving the crucial documents, Bean waited nearly four months, up to the eve of the close of discovery, to file the report with the court.

Second, Bean never sought to extend its expert-designation deadlines and, as the panel majority concede, Bean "presents no answer to [the] question" why it failed to do so. Bean's failure to request deadline extensions is curious; Bean clearly knew before the expiration of the deadlines that Fritsch's initial expert report did not tackle defects in the Suzuki motor or mounting. If for no other reason, Bean knew this because about a month before Bean's deadline for identifying a rebuttal expert, SMC's expert's report stated: "I find no engineering opinions in Fritsch's report which are critical of the design or construction of the Suzuki outboard motor." In light of Bean's obvious failure initially to produce expert evidence against SMC, the district court explained that "Bean has proffered no good explanation for why it failed to timely request

that its expert disclosure deadline be continued, or that the deadline for submitting rebuttal experts be extended." Even in its briefing to this court, Bean provides no such explanation. Its failure to do so surely does not weigh in favor of finding that the district court clearly abused its discretion.

And third, that the district court had accommodated the parties and granted numerous extensions of discovery deadlines makes an abuse-of-discretion finding all the more unsupportable. This court treats as paramount "a trial court's need to control its docket." *Hamburger v. State Farm Mut. Auto. Ins.*, 361 F.3d 875, 884 (5th Cir. 2004). Indeed, "[a]dherence to . . . scheduling orders [is] critical in maintaining the integrity of judicial proceedings," and "we are loath to interfere with the court's enforcement of that order" where the court has not abused its discretion. *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1289 (5th Cir. 1991). This case should be no exception. As the district court recounted, it had granted at least six prior motions to extend various deadlines, and it had been "liberal in granting the parties' prior requests for extensions of deadlines." Under these circumstances, we should hardly fault the district court for putting its foot down "less than one month before trial" and "declin[ing] to again amend the Case Management Order and reopen expert testimony." The district court made a quintessential discretionary decision to control its docket to which this court must defer.

In light of Bean's flimsy excuse and a holistic review of the record, I cannot agree that "Bean's explanation weighs in favor of reversing the district court." Bean's proffered explanation goes only to the state of affairs at the time its disclosure deadlines passed, but it does not explain Bean's failure to seek deadline extensions and otherwise timely disclose Fritsch's second report. A district court that has accommodated litigants at every turn and declines to do so at the eleventh hour when a litigant has not sought a similar accommodation

No. 16-60008

or disclosed an expert report within a reasonable period of time cannot be said to have clearly abused its discretion.  I respectfully dissent.