# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 4, 2020

Lyle W. Cayce
Clerk

No. 19-40934

AIG Europe, Limited,

*Plaintiff—Appellant*,

*versus*

Caterpillar, Incorporated; Dragon Products, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:17-CV-319

Before Jones, Haynes, and Ho, *Circuit Judges*.
Per Curiam:[*]

AIG Europe, Limited ("AIG") appeals the district court's exclusion of AIG's expert report and its grant of summary judgment on AIG's implied warranty and negligence claims against Caterpillar, Inc. ("Caterpillar") and Dragon Products, L.L.C. ("Dragon"). For the following reasons, we affirm.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

**I.**

Baker Hughes Incorporated ("BHI") contracted with XTO Energy, Inc. ("XTO") to conduct thirty-four stages of hydraulic fracturing at an oil and gas well site in Loving County, Texas.  BHI owned and maintained the sixteen pumping units used at the well site.  Each unit contained a Caterpillar 3512C engine.  The pumping units were placed to the north and south of a main pumping line.  The units on the north side were numbered one through nine, and the units on the south side were numbered ten through sixteen. During the twenty-third stage, the pumping unit in the third position began to overheat.  This unit was removed and replaced with the unit located in position number four, the "Subject Unit."  Pumping resumed with stage twenty-four.  About thirty minutes later, BHI personnel saw that the Subject Unit was on fire.  BHI shut down all sixteen pumping units.  Before the fire was extinguished, it damaged many of the pumping units, including all nine on the north side.

BHI ordered the Subject Unit from Dragon.  Before the Unit was delivered to BHI, it was sold through several entities in the chain of commerce.  Caterpillar manufactured the engine and sold it to Mustang Cat Power Systems, an authorized Caterpillar dealer.  Mustang sold the engine to Applied Cryo Technologies ("ACT").  Dragon hired ACT to assemble the pumping unit by installing a transmission and mounting the engine on a trailer.  ACT delivered the Unit to Dragon.  Together with Dragon, BHI completed assembly of the pumping unit and installed its own proprietary controls and engine hour meter.

The engine had three engine hour meters that recorded engine run time.  One was installed by Caterpillar and was located on the inside of the engine.  The second, also installed by Caterpillar, was located on the outside of the engine.  This meter did not function until it was repaired by an

independent Caterpillar dealer.  BHI never reported a problem with this hour meter.  The third was BHI's own hour meter.  This was the only meter BHI used and relied on.

Caterpillar recommended that each 3512C engine's oil be changed after 250 hours of run time.  BHI had its own policy of changing engine oil every 800 hours.  BHI changed the Subject Unit's engine oil for the only time in May 2016.  At that time, BHI's hour meter showed the engine had run for about 800 hours.  The engine's internal hour meter showed it had run for 1,911 hours as of March 2016.

After the fire, an investigation indicated that the fire originated from the Subject Unit and that the engine had a disconnected crankshaft counterweight and broken connecting rod.

AIG, as BHI's insurer, sued Caterpillar and Dragon.  AIG asserted Texas-law claims of negligence, design defect, manufacturing defect, and breach of implied warranty.  The district court, among other rulings, (1) struck the report of one of AIG's causation experts, Arthur Faherty, (2) denied AIG's motion for partial summary judgment, (3) and granted summary judgment for Caterpillar and Dragon on each of AIG's claims.

On appeal, AIG challenges the district court's exclusion of Faherty's report, its grant of summary judgment on AIG's implied warranty claim against Caterpillar and Dragon, and its grant of summary judgment on AIG's negligence claim against Caterpillar and Dragon.

## II.

AIG argues that the district court erred in striking Faherty's report and deposition.  We review the district court's exclusion of an expert report for abuse of discretion. *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 369 (5th Cir. 2016).  A district court has "wide latitude in determining the

admissibility of expert testimony . . . and its decision will not be disturbed on appeal unless manifestly erroneous." *Id.* (quotations omitted) (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)).

The district court excluded Faherty's initial report because it failed to comply with Federal Rule of Civil Procedure 26(a). Under Rule 26(a), expert reports must be "detailed and complete so as to avoid the disclosure of sketchy and vague expert information." *Michaels v. Avitech, Inc.*, 202 F.3d 746, 749 (5th Cir. 2000) (quoting *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)). Faherty admitted his initial report was "preliminary," contained "no real opinions," and lacked a "complete analysis or findings section." After reviewing Faherty's initial report, we agree with the district court that the report is "grossly deficient."

The district court excluded Faherty's supplemental report as untimely because AIG filed it on the final day of the discovery period. "District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997). Further, supplemental disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club*, 73 F.3d at 571. The district court had already extended the discovery period multiple times, and Caterpillar's and Dragon's experts did not have the opportunity to respond. Thus, the district court concluded AIG's filing of Faherty's supplemental report "appears merely to be gamesmanship designed to subvert the court's scheduling order and the requirements of Rule 26(a)."

"[W]e consider four factors to determine whether a district court abused its discretion by excluding expert testimony as untimely: '(1) the explanation for the failure to [produce the report earlier]; (2) the importance

of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.'" *C.F. Bean*, 841 F.3d at 369 (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). If we do find an abuse of discretion in excluding expert testimony, we "review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "The appellant bears the burden of proving the error was not harmless" by showing the error affected his "substantial rights." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 483–84 (5th Cir. 2015); *see also Tanner v. Westbrook*, 174 F.3d 542, 546 (5th Cir. 1999).

First, AIG argues that they did not submit Faherty's final report earlier because Caterpillar delayed the deposition of its representatives. This is not a satisfactory explanation. If AIG needed information from Caterpillar's experts to allow Faherty to complete his expert report, AIG should have moved to compel the depositions of those experts. We find no indication in the record that AIG made such a motion. While AIG did ask for several extensions of the discovery period, it never argued that Caterpillar was improperly denying AIG access to necessary depositions. Further, belying AIG's argument is the fact that Faherty admitted he had enough information to conduct a root cause analysis and complete a final report in November 2018, long before the close of discovery. The district court was correct to find this first factor favors exclusion.

Second, AIG argues that causation is the critical issue in this case and therefore that Faherty's report and testimony at trial are essential. Faherty was a causation expert, but the district court did not exclude AIG's other two causation experts, Andrew Stringer and Benjamin Pooler. AIG does state that Faherty's report was "essential," that he had "more developed views on causation" than other AIG experts, and that his report was "critical."

However, these limited conclusory statements in AIG's briefs do not show *how* Faherty's report was critical. Thus, AIG's claims do not turn on Faherty's report. Despite the exclusion, AIG had experts on causation. *See, e.g.*, *1488, Inc. v. Philsec Inv. Corp.*, 939 F.3d 1281, 1288 (5th Cir. 1991) ("Enforcement of the district court's pretrial order did not leave defendants without an expert witness on the issue of valuation."). The district court was correct to find the second factor favors exclusion.

Third, AIG argues that Caterpillar and Dragon would not be prejudiced if the district court admitted Faherty's report. To the contrary. As the district court recognized, while most of Faherty's report responded to the analysis of Caterpillar's experts, it also contained new analyses and conclusions. Defendants were not given the opportunity to challenge these conclusions on the critical issue of causation. *See Reliance Ins.*, 110 F.3d at 257–58 ("[T]he [district] court concluded that '[t]o allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date in this case.'"). The district court was correct to find the third factor favors exclusion.

Fourth, AIG argues that a continuance would have removed any potential prejudice before trial. While the district court agreed that a continuance could have removed the prejudice, it determined that a continuance was impractical and improper. This case has been pending for more than two years. The district court granted several continuances because of "AIG's dilatory prosecution of this action." While continuances are the preferred means of dealing with untimely expert reports, they are the exception. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) ("Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance."). Accordingly, a district court is "not required to grant a

continuance at such a late date" in litigation. *Harmon v. Ga. Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 39 (5th Cir. 2012) (per curiam). Yet another continuance would have delayed summary judgment and a potential trial even further. The district court was correct to find the fourth factor favors exclusion.

In sum, all four factors favor excluding Faherty's report. Thus, the district court did not abuse its discretion. Because we find no abuse of discretion, we do not need to conduct a harmless error analysis.

## III.

Next, we turn to whether the district court's grant of summary judgment for Caterpillar and Dragon on AIG's implied warranty of merchantability claim was correct. We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).

The implied warranty of merchantability requires that goods "are fit for the ordinary purposes" for which they are used. *See* TEX. BUS. & COM. CODE § 2.314. To establish a claim for breach of the warranty of merchantability, a plaintiff must show: (1) that the merchant leased or sold a product to the plaintiff; (2) that the product was unmerchantable, that is, unfit for its ordinary purpose; (3) that the plaintiff notified the defendant of the breach; and (4) that the plaintiff suffered injury. *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (quoting *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App. 2003)).

While Caterpillar argues that it did not breach the implied warranty, it also argues in the alternative that it disclaimed the implied warranty. In response, AIG asserts that it is unclear whether the disclaimer was communicated to BHI. Regardless, the record indicates that Dragon, a downstream purchaser, knew about Caterpillar's limited warranty, which

disclaimed the warranty of merchantability.  AIG did not challenge this testimony.  Thus, Caterpillar disclaimed the warranty as to Dragon.  "[A] downstream purchaser cannot obtain a greater warranty than that given to the original purchaser, so if the manufacturer at the point of original sale makes a valid disclaimer of implied warranties, that disclaimer extends to subsequent purchasers."  *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 140 (Tex. 2014).  Because Caterpillar made a valid disclaimer as to Dragon, that disclaimer extends to BHI, a downstream purchaser.  Accordingly, the district court was correct to grant summary judgment on disclaimer and AIG does not challenge this determination on appeal.  We may affirm summary judgment on any ground raised below and supported by the record, so we do not discuss whether Caterpillar breached the implied warranty.  *See James v. Woods*, 899 F.3d 404, 407–08 (5th Cir. 2018).

As for Dragon, AIG first argues that because the engine hour meter did not work when it left Dragon's control, Dragon breached the implied warranty.  However, to assert a breach of implied warranty it is necessary to show that the breach of the warranty was the proximate cause of the injury.  *See* TEX. BUS. & COM. CODE § 2.314 & cmt. 13; *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 853 (Tex. App. 2005).  There is no dispute in the record that BHI only used its own hour meter and never relied on the engine hour meter.  Because BHI did not rely on the broken engine hour meter, it was not the proximate cause of the fire.  Therefore, Dragon did not breach the implied warranty with respect to the engine hour meter.

Aside from the defective engine hour meter, AIG presents no evidence that any other part of the pumping unit was unmerchantable when it left Dragon's control.  The warranty of merchantability only applies to conditions that exist at the time of the sale, not those that develop later.  *See Pittsburg Coca-Cola Bottling Works v. Ponder*, 443 S.W.2d 546, 548 (Tex. 1969).  AIG does not offer any direct evidence of a defect with the pumping

unit.  Rather, AIG argues that the unexplained connecting rod failure is circumstantial evidence of a defect.  To prove a defect by circumstantial evidence, AIG must show that BHI properly used the engine and that it malfunctioned anyway.  *Omni USA, Inc. v. Parker Hannifin Corp.*, 964 F. Supp. 2d 805, 837 (S.D. Tex. 2013) (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444–45 (Tex. 1989)).  AIG does not offer any evidence that BHI properly used the Subject Unit's engine.  Rather, the evidence is undisputed that BHI disregarded Caterpillar's guidance that the engine oil be changed after every 250 hours of run time.  Instead, BHI adopted its own policy of changing the oil every 800 hours.  In fact, BHI only changed the engine oil once, and only after the engine had run for at least 800 hours.  Because AIG does not create a genuine dispute of fact about proper use, the district court was correct to award summary judgment for Dragon.

Finally, Texas law requires that BHI have notified Dragon of the breach of warranty before bringing a claim.  *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 706 (5th Cir. 2014).  There is no evidence in the record that BHI notified Dragon of any breach of warranty.

Thus, the district court was correct to award summary judgment to Caterpillar and Dragon on AIG's implied warranty claim.

## IV.

Next, we turn to the district court's grant of summary judgment for Caterpillar and Dragon on AIG's negligence claim.  AIG argues that Caterpillar's defective engine hour meter demonstrates negligence in inspecting and assembling the engine.  Caterpillar argues that AIG's negligence claim fails on causation, breach, and duty.

With respect to Caterpillar, we start and end our analysis with causation.  "[N]egligence requires a showing of proximate cause" which consists of "cause in fact and foreseeability."  *Meador v. Apple, Inc.*, 911 F.3d

260, 264 (5th Cir. 2018) (quotations omitted) (quoting *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995)). "Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred." *Id.* (quoting *Allbritton*, 898 S.W.2d at 775).

Here, AIG concedes that the engine hour meter *itself* was not the cause of the fire. Rather, it argues that, had the meter worked, BHI would have been able to take action to prevent the fire. Even still, AIG points to no evidence that the meter's inoperability or BHI's lack of knowledge of the discrepancy in engine-hours caused the fire. Indeed, it is undisputed that BHI relied solely on its own proprietary engine hour meter. Nor did BHI notify Caterpillar at any point that the engine hour meter was not working, which indicates that BHI did not even attempt to rely on this hour meter. Further, even if the meter had been working, there is no indication this would have prevented the fire since, as noted above, BHI adopted its own oil change policy. Thus, because BHI did not use or rely on the engine hour meter, it was not the proximate cause of the fire. Indeed, as the Texas Supreme Court has held, "cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible." *IHS Cedars Treatment Ctr., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). The district court was correct to grant summary judgment to Caterpillar on the causation element. Because AIG cannot survive summary judgment on causation, we need not consider the breach and duty elements of negligence.

With respect to Dragon, our analysis is even simpler. Negligence requires evidence that the defendant owes the plaintiff a duty and that it breached that duty. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). On appeal, AIG offers no arguments that Dragon was negligent. Every argument AIG makes is directed to Caterpillar. "An appellant abandons all issues not raised and argued in its initial brief on appeal." *Cinel*

*v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).  Thus, AIG's negligence claim against Dragon is waived.

Even if we looked past waiver, AIG sets forth no specific facts attempting to show Dragon's negligence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial.") (quotations omitted).  Accordingly, the district court was correct to grant summary judgment to Dragon on AIG's negligence claim.

\* \* \*

For the foregoing reasons, we affirm.