# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 24, 2025

Lyle W. Cayce
Clerk

———————

No. 23-40680

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Mary Francis Chupick Bennett,

*Defendant—Appellant*.

———————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CV-166

———————————————————————————

Before Jones and Oldham, *Circuit Judges*, and Hendrix, *District Judge*.[*]

James W. Hendrix, *District Judge*:

Mary Bennett owns a farm on the U.S.–Mexico border. The United States had an easement on a portion of the property and built a segment of the border wall on that same portion in 2008. The United States then brought this condemnation action to take that portion of the land and areas surrounding it to further build up the wall and make related improvements.

---

[*] United States District Judge of the Northern District of Texas, sitting by designation.

No. 23-40680

Bennett contends that the government exceeded the scope of its easement when it built the wall, that she therefore owns the wall, and that as a result she is entitled to just compensation for the value of the wall. Bennett sought to present expert testimony regarding the value of the wall. The district court excluded the testimony, concluding that Bennett is not entitled to just compensation for the value of the wall.

In the district court, the parties focused on the general common-law rule recognized in *Searl v. School-Dist. No. 2*, 133 U.S. 553 (1890), that fixtures upon land built by a trespasser become part of the estate—the trespass rule. The district court read *Searl* to include an exception to the trespass rule for trespassers with an objective, good-faith belief in their right to build the fixture. The district court concluded that the government had such a belief, so Bennett was precluded from recovering the wall's value. The parties dispute *Searl*'s holding on appeal, but the government asserts an additional argument for affirmance. It contends that, even if it exceeded the scope of its easement, it was acting under its power of eminent domain, so the trespass rule could not limit or subvert its constitutional authority. We agree.

Ms. Bennett is certainly entitled to compensation for the value of the taken land. And we do not address whether Bennett is entitled to just compensation for other reasons, such as aesthetic damages or loss of or restricted access to other parts of the farm. But she is not entitled to the value of the wall that the government built at its own expense on land that it acquired—and will pay for—through eminent domain.[1] We AFFIRM.

---

[1] For purposes of this opinion, we assume without deciding that the government exceeded the scope of its easement.

2

No. 23-40680

## I.

Bennett owns a cotton farm near the U.S.–Mexico border in Texas. On the land is a flood-control levee. In 1935, Hidalgo County, Texas acquired a perpetual, right-of-way easement over the land for constructing and maintaining levees to control the Rio Grande's flood waters. The easement occupied approximately 4.43 acres of the farm. In 1937, the County assigned the easement to the United States. The deed granted the United States the perpetual right to, *inter alia*, construct and maintain levees and make related improvements.

In 2008, United States Customs and Border Protection and the U.S. International Boundary and Water Commission constructed a fence made of metal bollards—the "wall"—atop the existing levy[2] that the government claimed would serve the dual purposes of flood control and border protection. The government relied on various statutes concerning border control as authority for its construction of the wall. Between 2008 and the start of this litigation, it appears that Bennett did not object to the wall.

The United States initiated this condemnation proceeding in 2020. The government's purported purpose is to construct and maintain fencing, barriers, and related structures to secure the border. Bennett did not contest the condemnation but did submit a demand for a jury trial on the matter of just compensation.

In July 2022, Bennett moved to compel discovery concerning the construction costs of the wall. The government opposed the motion,

---

[2] Bennett and the government refer to the rust-colored bollards and concrete base interchangeably as a "wall" and "fencing." Because common parlance typically refers to these bollards as the "border wall," we refer to the bollards and concrete base as the "wall" and the entire improvement, including the levee, as the "structure."

3

contending that Bennett was not entitled to compensation for the value of the wall because the government owned the structure on the date of the taking. The district court denied the motion to compel, concluding that the government's good-faith belief in its right to build the improvements and public purpose for doing so meant that Bennett would not have owned the wall even if the government were a trespasser.

Bennett subsequently sought to depose federal officials concerning the subjective belief of the government regarding the scope of the easement at the time of the construction of the wall and the government's post-condemnation plans for the land. The government moved for a protective order to prevent the requested depositions. The district court granted the motion, concluding that the subjective good faith of the government was irrelevant to the application of the equitable exception to the trespass rule and that the property records gave Bennett sufficient information to investigate the government's good faith.

Bennett then procured an expert appraisal regarding the value of her farm and the wall, as well as an opinion of the cost of the wall's initial construction. The government moved to exclude the appraisal testimony because it was contrary to the district court's rulings on the application of the equitable exception to the trespass rule. The district court, relying on its previous orders, granted the motion. In that same order, the district court suggested the following question when it certified its decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

> Whether the government-as-improver can benefit from *Searl*'s equitable exception to the rule that "the trespasser can acquire no rights by his tortious acts" absent a subjective good faith basis for the improvement, and if not, whose subjective good faith is relevant to a determination of whether the exception applies.

The district court stayed all other matters pending resolution of this appeal.

We granted the motion for leave to appeal from the interlocutory order. The district court had jurisdiction over the case pursuant to 28 U.S.C. § 1358 because the United States sued to condemn real estate for one or more of its departments or agencies to use. We have jurisdiction under 28 U.S.C. § 1292(b). The appeal presents a controlling question of law as to which there is substantial ground for difference of opinion, and this appeal will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *cf. Silverthorne Seismic, LLC v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593 (5th Cir. 2025) (dismissing the 1292(b) appeal because any impact on the case from resolving the appeal would be too speculative and dependent on the resolution of antecedent issues).

## II.

The parties dispute what issues are before the panel. Bennett contends that the sole issue presented is whether the government's good-faith belief in building the wall needs to have been subjectively held. But "section 1292(b) authorizes certification of orders for interlocutory appeal, not certification of questions." *Linton v. Shell Oil Co.*, 563 F.3d 556, 557 (5th Cir. 2009). It is thus the district court's entire order granting the government's motion to exclude the expert's testimony that is before us, and we may resolve any questions necessary to review that order. *Id.* We may also consider other orders that are inextricably intertwined with review of the appealed order and any question reasonably bound up with the certified order. 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3929 (3d ed. 2024). This appeal thus concerns whether the expert testimony is admissible because Bennett owned the wall and is thus entitled to just compensation for the value of the wall.

No. 23-40680

We review the grant of a motion to exclude expert testimony for abuse of discretion. *C.F. Bean LLC v. Suzuki Motor Corp.* (*In re Complaint of C.F. Bean LLC*), 841 F.3d 365, 369 (5th Cir. 2016). A decision premised on an error of law constitutes an abuse of discretion. *Lake Eugenie Land Dev., Inc. v. BP Expl. & Prod., Inc.* (*In re Deepwater Horizon*), 785 F.3d 986, 999 (5th Cir. 2015). Regardless of whether federal or state law controls, whether Bennett owned the wall raises questions of law that the Court reviews de novo. *See VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (explaining that we review federal preemption determinations de novo); *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000) (stating that interpretation of state law is reviewed de novo).

### III.

### A.

We must first consider what source of law governs the issues in this appeal. Under the Constitution, Bennett is entitled to just compensation for the value of what the government is condemning, based on the fair market value of the land and improvements that Bennett owned at the time of the taking. U.S. Const. amend. V; *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973). But state law generally governs the property rights that the Takings Clause will protect. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 155 (2021) ("[T]he property rights protected by the Takings Clause are creatures of state law."). State law cannot, however, limit the federal government's power of eminent domain or "prescribe the manner in which it must be exercised." *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482, 494–95 (2021) (quoting *Kohl v. United States*, 91 U.S. 367, 374 (1876)). Thus, if the government's construction of the wall was pursuant to its power of eminent domain, then federal law will govern if it conflicts with state law. Federal law will also govern if a statute upon which the government

was acting preempts state law on these matters. *See generally* U.S. Const. art. VI cl. 2.

### B.

The United States asserts that the trespass rule cannot entitle Bennett to the wall's value because the government acted pursuant to its constitutional power of eminent domain. We agree. The government took Bennett's property for a public purpose, and no state trespass rule can award ownership of the wall to Bennett because doing so would improperly limit the government's constitutional power of eminent domain. The government must pay Bennett for what it took—the land—but state law cannot require the government also to pay her for what it paid to build on the land.

To be sure, the power of eminent domain is limited to taking property for a public use. U.S. Const. amend. V; *see Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31–32 (2012) (explaining that "a permanent physical occupation of property authorized by government is a taking"). In *United States v. Dow*, 357 U.S. 17 (1958), the Supreme Court explained that one manner in which the United States may take property pursuant to its power of eminent domain is by entering "into physical possession of property without authority of a court order." *Id.* at 21. The construction of the wall would certainly constitute a taking. Thus, if the government was acting pursuant to its power of eminent domain, then state law would not apply because it would be an unconstitutional limitation on the federal government's power of eminent domain. *See PennEast Pipeline Co.*, 594 U.S. at 494–95 ("The federal eminent domain power . . . 'can neither be enlarged nor diminished by a State. Nor can any State prescribe the manner in which it must be exercised.'") (quoting *Kohl*, 91 U.S. at 374).

Here, the government constructed the wall for a public purpose. The parties dispute whether the government's purpose was solely border security

7

or both border security and flood control. Even if the government were acting for both purposes, the taking's purposes are public. Exercise of the eminent-domain power need only be rationally related to a conceivable public purpose. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984). Border control achieves the public purposes of preventing illegal entry into the United States, human trafficking, and the importation of illegal narcotics. Preventing crime and harm to the public is a quintessential public purpose. Water control also qualifies as public use. *Cf. James v. United States*, 740 F.2d 365, 370 (5th Cir. 1984) (describing "the construction of public works for flood control purposes" as "a taking of private property for public use[]").

The government was therefore acting under its power of eminent domain. *See Dow*, 357 U.S. at 21; U.S. Const. amend. V. Thus, no state trespass rule can apply. A state law giving ownership over improvements made as part of the federal government's power of eminent domain and treating the government as a naked trespasser would unconstitutionally limit the federal government's power of eminent domain. Doing so would deprive the government of property that it built unless it paid the estate owner more than the amount of just compensation required by federal law. *See PennEast Pipeline Co.*, 594 U.S. at 494–95.

Another feature of federal takings law supports this conclusion—the value of just compensation reflects the property as it exists at the time of the taking. *Dow*, 357 U.S. at 22. When the government enters into possession of property before acquiring title, the time of possession qualifies as the taking. *Id.*; *see Ark. Game & Fish Comm'n*, 568 U.S. at 31–32.[3] Thus, Bennett would

---

[3] There may be some concern that our assumption in this case—that the government exceeded the scope of its easement in 2008—would preclude Bennett from

not be entitled to compensation for the value of the wall because the wall did not exist at the time of the taking in 2008. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 368–69 (2015) (explaining that just compensation is normally measured by the market value of the property at the time of the taking).

The parties rely heavily on *Searl*, but that case is not applicable here. In *Searl*, a school district purchased a squatter title, relying on advice of counsel that the title was superior to Searl's patent over the land. 133 U.S. at 555–57. The school district then built a school on the land. *Id.* at 556. But the advice of the district's counsel was erroneous, so the school district brought condemnation proceedings against the land. *Id.* at 560–63. Searl contended that he was entitled to just compensation for the value of the school because of the trespass rule. *Id.* The Supreme Court disagreed. *Id.* at 564–65.

The parties dispute whether the Supreme Court's holding hinges on the school district's good-faith belief in valid title or the public purpose of the occupancy. *See Searl*, 133 U.S. at 562–63. But because *Searl* was interpreting and applying Colorado law rather than Texas law, *Searl* does not resolve this appeal, and we need not determine whether either or both conditions are sufficient. *See id.* at 565. Thus, *Searl* is not binding even if we were to conclude that state law governed the government's actions in 2008. And further distinguishing this case from *Searl* is that this case involves the federal

———————————

recovering at all because an inverse-condemnation suit would be untimely. But it does not follow from this assumption that title to the property passed to the government at that time. Under *Dow*, "title to the property" does not appear to have "passe[d] to the [g]overnment" in 2008 because "the owner," Bennett, does not appear to have "receive[d] compensation." 357 U.S. at 21–22. So even if the government exceeded the scope of its easement by building the border wall in 2008, that may well have only "fixe[d] the date as of which the land is to be valued." *Id.* at 22. But if title didn't transfer, the delay would not render the government's direct-condemnation suit ineffectual. Of course, we do not resolve this issue here, as it is not properly before us. Instead, it is left for the district court on remand.

9

government, which has the power of eminent domain and whose activities are subject to or authorized by the U.S. Constitution and federal laws that may preempt the application of state laws. Since *Searl* did not involve the federal government's power of eminent domain, the case says nothing about the relationship between federal eminent-domain power and state trespass law. *Searl* is thus inapposite.[4]

\*    \*    \*

In sum, Bennett is entitled to the value of the land taken but not to the value of the wall. The government acquired the land and built the wall through its eminent-domain power, and it did so for a public purpose. Thus, Texas's trespass rule could not operate to treat the government as a trespasser and force it to pay Bennett for the wall that it built at its own expense. Without a claim for just compensation for the wall, the expert's testimony as to the value of the wall is irrelevant. We therefore AFFIRM the order of the district court and REMAND the case for proceedings consistent with this opinion.

---

[4] Although we need not reach the issue, Bennett does not appear to fare any better under Texas law. To be sure, Texas adheres to the trespass rule, but it also applies a public-nature exception to its application. In *Preston v. Sabine & E.T. Railway*, 7 S.W.3d 825 (Tex. 1888), for example, the Supreme Court of Texas held that the trespass rule did not apply when a railway company built a railroad without the owner's consent on land previously condemned through eminent domain. *Id.* at 825–26; *see also Tex. & Pac. Ry. v. Hays*, 3 Willson 79, 82–84 (Tex. Ct. App. 1885) (reaching the same conclusion as *Preston* because of the public nature of the railway company and the public purpose of the improvement); *cf. Anderson-Tully Co. v. United States*, 189 F.2d 192, 194–197 (5th Cir. 1951) (applying Mississippi law—of which the leading case cites Texas law—in holding that Mississippi's trespass rule did not apply to entities with the power of eminent domain).