**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-30538
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFONZO MASON and LINDA FAYE HAWKINS SMITH,

Defendants-Appellants.

_____

Appeals from the United States District Court
For the Western District of Louisiana

_____

June 10, 2002

Before DUHÉ, DeMOSS, and CLEMENT, Circuit Judges.

CLEMENT, Circuit Judge:

Alfonzo Mason and Linda Faye Hawkins Smith appeal their convictions for conspiring to distribute crack cocaine. For the following reasons, we vacate the appellants' convictions and sentences and remand for a new trial.

I.

In the spring of 1999, the Madison Parish Sheriff's Office received a tip from a confidential informant that appellants Alfonzo Mason ("Mason") and Linda Faye Hawkins Smith ("Smith") were selling crack cocaine in Tallulah, Louisiana. Based on this information the sheriff began an investigation that allegedly

involved several undercover purchases and drug seizures from Mason and Smith. The sheriff's office reported its findings to the United States Attorney for the Western District of Louisiana, and in September 2000, Mason and Smith were charged by a federal indictment with conspiring to distribute crack cocaine, distributing crack cocaine, and possessing crack cocaine with the intent to distribute. After a jury trial both Mason and Smith were convicted on the conspiracy count and several individual distribution and possession counts. Mason was sentenced to 30 years in prison, and Smith received more than 15 years incarceration.

The government's primary witness at trial was James Dawson ("Dawson"), who emerged as a suspect during the sheriff's investigation when he was arrested with 3.9 grams of crack cocaine after leaving Mason's motel room. Shortly after his arrest Dawson began to cooperate with the government. He informed the government that Mason and Smith had been dealing crack from Smith's home; that Mason had transported a large amount of crack from Las Vegas, Nevada to Tallulah; and that Melvin Cooper, now deceased, had helped Mason set up his distribution operation in Tallulah. Finally, Dawson admitted that he had purchased crack from Mason on the night of his arrest. After conveying this information Dawson entered into a plea agreement with the government and agreed to testify against Mason and Smith at trial. Mason and Smith now ask us to vacate their convictions and sentences because Dawson falsely

2

testified that he did not enter into a plea agreement with the government and the government failed to correct Dawson's misrepresentation.

## II.

The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony. *See* <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264, 271 (1959). To prove a due process violation, the appellants must establish that (1) Dawson testified falsely; (2) the government knew the testimony was false; and (3) the testimony was material. *See* <u>Giglio</u>, 405 U.S. at 153-54; <u>Knox v. Johnson</u>, 224 F.3d 470, 477 (5th Cir. 2000).

Under direct examination by the government, Dawson stated that he had not entered into a plea agreement:

> Q. And as a result of being arrested did you, have you entered into an agreement with the government?
> A. No, sir.

This testimony was false and the government knew it. Dawson did in fact enter a plea bargain, and the same assistant United States Attorney who prosecuted Mason and Smith signed the agreement. Since Mason and Smith have easily established the first two elements of their due process claim, we must turn to the question of whether Dawson's false testimony was material.

The government contends that Dawson's false statement was immaterial because, viewing his testimony in its entirety, the

3

essence of his plea agreement was revealed to the jury.  On direct examination, Dawson testified:

> Q.   And as a result of being arrested did you, have you entered into an agreement with the government?
> A.   No, sir.
> Q.   You have not entered a plea of guilty?
> A.   I have entered a plea of guilty.
> Q.   And what do you expect from, and you agreed to come here and testify, is that correct?
> A.   Yes, sir.
> Q.   And what did you agree to testify to?
> A.   Just the truth.
> Q.   And what do you expect for this?
> A.   Nothing but just telling the truth.  I might get leniency or something.
> Q.   And what did, did anybody tell you anything about leniency that you might get?
> A.   Nobody made me no specific promises.  Everybody I asked, they couldn't promise me nothing.

The subject resurfaced on redirect:

> Q.   Mr. Dawson, you were told at all cost to tell the truth here today, were you not?
> A.   Yes, sir.
> Q.   And you were also told that no one could make any promises to you about what your sentence would be?
> A.   No promises.
> Q.   Because only the judge could determine that?
> A.   Yes, sir.
> Q.   And you were told that any cooperation you give would be made known to the district attorney or the prosecutor, weren't you?
> A.   Yes, sir.

In light of this testimony, the government submits that the jury knew that Dawson agreed to testify to "[j]ust the truth," that he knew he "might get leniency or something," and that "any cooperation [he] g[a]ve would be made known to the district attorney or the prosecutor."  However, the appellants point out that the signed plea agreement also grants Dawson use immunity for

4

his testimony; provides that the "United States will advise the Court of any assistance provided by the Defendant"; and states that the "United States may, but shall not be required to, make a motion requesting the Court to depart from the sentencing range called for by the guidelines in the event he provides 'substantial assistance.'" Contrary to the government's position, we do not find that Dawson's statements at trial conveyed all this information to the jury.

Even if Dawson did not fully describe the contents of his plea agreement, the government argues that because the agreement was available to the defense before trial, the appellants "cannot now claim that the government should have revealed the entire plea agreement to the jury but rather it was incumbent upon defense counsel to cross-examine the witness about his plea agreement." However, although the government claims that all of its files were available to defense counsel before trial, and there is no explanation why defense counsel did not avail himself of the opportunity to examine the files, there is no evidence that defense counsel actually saw the plea agreement. Furthermore, defense counsel's failure to avail himself of the policy making the plea agreement available does not relieve the government of its affirmative responsibility to correct false testimony.

Finally, the government asserts that the district court's instructions to the jury cured any error caused by Dawson's misleading statement. Specifically, the government points to the

caution in Fifth Circuit Pattern Instruction 1.08 that jurors should ask themselves whether a witness had a personal interest in the outcome of the case or a relationship with either the government or the defense. However, since the jury did not know that an executed plea agreement existed, we cannot say that it fully appreciated the relationship between the government and Dawson. Accordingly, the error caused by Dawson's false statement was not remedied by the jury charge.

As a result of Dawson's material misrepresentation, the defense may have been prevented from effectively cross-examining the government's most important informant, and the jury was unable to properly evaluate Dawson's testimony. By failing to correct the misrepresentation, we find that the government violated Mason and Smith's rights to due process under the Fourteenth Amendment.

## III.

Because the government violated the appellants' due process rights, we vacate Mason and Smith's convictions and sentences and remand for a new trial.

VACATED AND REMANDED.