**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4647

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LANNY BENJAMIN BODKINS,

Defendant - Appellant.

No. 06-4652

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTHOINE PLUNKETT,

Defendant - Appellant.

Appeals from the United States District Court for the Western District of Virginia, at Danville. Glen E. Conrad, District Judge. (4:04-cr-70083-1; 4:04-cr-70083-GEC)

Argued: December 7, 2007          Decided: April 18, 2008

Before NIEMEYER and GREGORY, Circuit Judges, and Henry F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** Rhonda Lee Overstreet, LUMSDEN & OVERSTREET, Roanoke, Virginia; Clifford Lee Harrison, HARRISON & TURK, P.C., Radford, Virginia, for Appellants. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** William H. Cleaveland, Roanoke, Virginia; James C. Turk, Jr., HARRISON & TURK, P.C., Radford, Virginia, for Appellant Lanny Benjamin Bodkins. John L. Brownlee, United States Attorney, Craig J. Jacobsen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Anthoine Plunkett was accused of hiring Lanny Bodkins and Keith Taylor to murder Tyree Wimbush. Following a six-day jury trial, Plunkett and Bodkins (collectively, Appellants) were convicted of conspiracy to travel in interstate commerce to commit murder for pecuniary gain and interstate travel to commit murder for pecuniary gain (Counts I and II); conspiracy to travel in interstate commerce to commit interstate stalking (Count III); travel in interstate commerce to commit interstate stalking (Count IV); and using a firearm during and in relation to a crime of violence that resulted in death (Count V).

Prior to trial, the Attorney General authorized the death penalty for Appellants, but withdrew the authorization before sentencing. Appellants were each sentenced to life.

Plunkett made post-trial motions concerning the sufficiency of the evidence and alleged Brady violations; and Bodkins filed a motion asserting that the district court should find that he was entitled to relief pursuant to 18 U.S.C. § 3553(e). The trial court denied each of these motions. This appeal followed. For the reasons stated below, we affirm the judgment of the district court.

I.

Plunkett, a black drug dealer, hired Bodkins and Keith Taylor, two white men, to murder Tyree Wimbush, because Plunkett mistakenly

3

thought that Wimbush was a confidential informant for local drug investigators.  Each of these individuals used and sold drugs.

On July 22, 1999, Bodkins and Taylor drove from Johnson City, Tennessee, to Danville, Virginia, to kill Wimbush.  Bodkins shot Wimbush three times, killing him with a wound to the aortic artery. Just before he fell to the ground, Witness James Lewis Fitts heard Wimbush say that he had been hit or shot.

The procedural history, as detailed by the district court, is as follows:

> Lanny Benjamin Bodkins, Anthoine Plunkett, and Darel Keith Taylor were indicted by a grand jury on February 17, 2005, and charged with: conspiracy to travel in interstate commerce with the intent to commit murder for pecuniary gain; travel in interstate commerce with the intent to commit murder for pecuniary gain, aiding and abetting; conspiracy to travel in interstate commerce with the intent to commit interstate stalking; travel in interstate commerce with the intent to commit interstate stalking, aiding and abetting; and use of a firearm during and in relation to a crime of violence resulting in death, aiding and abetting.  The United States filed Notices of Intent to Seek the Death Penalty as to Bodkins and Plunkett on February 17, 2005.
>
> Taylor had confessed to involvement in the murder of Tyree Wimbush in September of 2002, during investigation of the murder, and had entered into a plea agreement with the government.  Pursuant to that agreement, he pled guilty to two counts of the indictment; conspiracy to travel in interstate commerce with the intent to commit murder for pecuniary gain (Count One), and use of a firearm during and in relation to a crime of violence resulting in death, aiding and abetting (Count Five). Before the trial began, counsel for the government gave counsel for Plunkett a tape and transcript of a statement given by Taylor on September 19, 2002. This was the only statement from Taylor provided to counsel for Plunkett.

4

In the weeks prior to trial of the remaining defendants, the parties engaged in limited plea discussions. On August 12, 2005, Bodkins made a proffer to the government that yielded information that was substantial to the government's case. Prior to the proffer, Assistant United States Attorney Craig J. Jacobsen told Bodkins that Bodkins would have two options in regards to going to trial. Bodkins could either choose to testify at trial on his own behalf or choose not to testify at all. Jacobsen told Bodkins that he thought if Bodkins told the jury the truth, it was his opinion that the jury would have a much more difficult time imposing the death penalty. At the proffer, Bodkins gave the government attorneys information concerning a Tennessee telephone number. The number, which Bodkins had originally said was his girlfriend's, received a call from Plunkett's mother's telephone card at 2:47 a.m. on July 23, 1999, several hours after the Wimbush murder. As a result of the information, the government renewed attempts to obtain the records for that telephone number, and questioned Taylor about the number. The information provided by Bodkins was very useful to the government in the prosecution of the case. The telephone records were given to Plunkett's attorneys in advance of trial, but Plunkett was not informed of the proffer given by Bodkins prior to trial.

Bodkins was offered a plea agreement on August 14, 2005. The terms of the agreement provided that United States Attorney John Brownlee would recommend to the Department of Justice that Bodkins would receive a life sentence without the possibility of parole, if Bodkins would plead guilty and testify for the government at trial. Bodkins rejected the plea offer.

The trial began on August 15, 2005. Pursuant to his plea agreement, Taylor testified at trial. At the start of trial, both Plunkett and Bodkins were unavailable to be called as witnesses by the United States. During the trial, Bodkins advised the court that he would be available to be called as a witness. Plunkett was still not informed that Bodkins had been offered a plea agreement, however. Bodkins later took the stand on his own behalf, and testified in conformity with the government's theory of the case. On September 2, 2005, Bodkins and Plunkett were convicted by a jury on all counts of the indictment. The evidence at trial

5

established that Plunkett hired Bodkins and Taylor to murder Tyree Wimbush.

During the penalty phase of the trial, the government moved to withdraw the death notices as to both defendants Bodkins and Plunkett. The court granted this motion. Bodkins and Plunkett now stand convicted of three capital offenses which are punishable only by life imprisonment without possibility of release and two offenses which are punishable by a term of years up to life imprisonment without possibility of release.

Taylor was sentenced on December 12, 2005. The court granted the government's motion for a downward departure for substantial assistance, sentencing Taylor to 180 months of incarceration on Count One and 120 months of incarceration on Count Five, to run consecutively.

After the trial, Bodkins filed a Motion for Presentencing Relief, alleging that the United States breached an implied pretrial agreement with Bodkins to give him the same bargain as Taylor if he made a proffer of substantial information. Bodkins sought enforcement of the alleged agreement. The motion was denied by this court on April 27, 2006.

Defendant Plunkett filed a motion for new trial based on undisclosed Brady material ("First Brady Motion") on November 11,2005, alleging that certain statements made by defendant Taylor were not disclosed to the defendant prior to trial. Plunkett filed another motion based on undisclosed Brady material on January 6,2006 ("Third Brady Motion"), seeking a new trial because he had not been informed of Bodkins' negotiations with the government prior to his testimony. A hearing on the motions was held on April 28, 2006.

(J.A. 1939-42) (footnote omitted).

II.

Plunkett argues that the district court erred in finding that the evidence presented at trial supported his convictions. To

determine if there was sufficient evidence to support a conviction, we consider whether, taking the evidence in the light most favorable to the government, substantial evidence supports the jury's verdict. Glasser v. United States, 315 U.S. 60, 80 (1942) ("The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it.").

Substantial evidence is defined as "that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)). We review both the direct and circumstantial evidence and accord "the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (citation omitted).

When reviewing claims of sufficiency of the evidence, "[t]he relevant question is not whether the appellate court is convinced of guilt beyond a reasonable doubt, but rather whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." Tresvant, 677 F.2d at 1021 (citations omitted).

Concerning Counts One and Two, 18 U.S.C. § 1958(a) provides, in relevant part, that

> [w]hoever travels in or causes another . . . to travel in interstate . . . commerce . . . with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined . . . or imprisoned . . . or both.

18 U.S.C. § 1958(a).

Plunkett maintains that certain of the government's evidence is inconsistent with other evidence that the government presented, (Appellants' Brief 27-29), but that "Defense witnesses offered testimony free of bias and inconsistency." (Appellant Brief 29.)

We first note that it is not the duty of this Court to weigh the evidence and to resolve inconsistences. That, instead, is the province of the trier of fact. In fact, from our review of the record, it appears that is exactly what the jury was called upon to do.

Moreover, and as observed by the government, the inconsistencies cited by Plunkett are insignificant. (Appellee's Brief 12.) As such, we see no need to detail each one here. Simply stated, "Taylor's testimony that Plunkett hired him and Bodkins to kill Wimbush, Bodkins and Plunkett's pretrial admissions, Plunkett and Taylor's incriminating phone records, and the eyewitnesses to Wimbush's murder amply established Plunkett's

8

guilt on [Counts One and Two]." (Appellee's Brief 11-12.) Accordingly, we will affirm the district court on this issue.

Counts Three, Four, and Five pertain to the interstate stalking crimes for which Plunkett was charged. To establish the crime of interstate stalking, the government must prove beyond a reasonable doubt that (1) the defendant traveled in interstate commerce; (2) such interstate travel was with intent to injure or harass the victim; and (3) during or after such travel, the defendant committed an act of placing the victim in reasonable fear of death or serious bodily injury. 18 U.S.C.A. § 2261A; United States v. Wills, 346 F.3d 476, 493-94 (4th Cir. 2003).

Plunkett contends that the third element of the offense is not met. According to Plunkett,

> [t]here is no evidence of a pattern of intimidation or threats from Plunkett to Wimbush. Evidence established that Wimbush and Plunkett were friendly acquaintances for a significant period. The evidence establishes that Wimbush voluntarily approached the vehicle on the night of July 22 to conduct a drug deal. If Wimbush had in fact been in fear for his life, he would not have approached the vehicle in such a manner.

(Appellants' Brief 32.) We find these arguments to be unavailing.

The fear element of § 2261A requires only that, for some period of time, the victim was placed in reasonable fear of death or serious bodily injury. Wills, 346 F.3d at 494. Whether there was a pattern of intimidation or a friendly relationship between the defendant and the victim is of no moment. The fact that Wimbush freely approached the vehicle is equally inconsequential.

9

At trial, Witness Fitts testified as follows:

Q. When you heard the shots, did you hear [Wimbush] say anything?
A. Yes, sir.
Q. What did he say?
A. "I been" -- "I been hit" or "I been shot" or something like that.
Q. And then after he was shot, what did he do?
A. He just, like, grabbed to where he was shot at and, like, stood there for a second and then fell over to the curb.

(J.A. 94.) We are of the opinion that Wimbush's statement that he had been shot establishes that he was placed in reasonable fear of death or serious bodily injury, See Wills, 346 F.3d at 494, albeit for a very short period of time. Therefore, we will affirm the district court on this issue as well.

III.

Plunkett next contends that the district court erred in refusing to grant a new trial on the basis that the government violated Plunkett's due process rights by neglecting to divulge one of its witness' prior inconsistent statements until midway through the trial. We review the court's refusal to grant a new trial for an abuse of discretion. United States v. Huggins, 191 F.3d 532, 536 (4th Cir. 1999).

A Brady violation occurs when the government fails to disclose prior to trial "evidence favorable to an accused . . . where the evidence is material to guilt or punishment, irrespective of the

good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). This Court has found that the evidence is favorable if (1) it would exculpate the accused or (2) it could be employed to impeach a government witness. United States v. Ellis, 121 F.3d 908, 914 (4th Cir. 1997); United States v. Bagley, 473 U.S. 667, 682 (1985). Nevertheless, no due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial. United States v. Smith Grading and Paving, Inc. 760 F.2d 527, 532 (4th Cir. 1985) (citing United States v. Higgs,,713 F.2d 39 (3rd Cir. 1983).

> Materiality is the final limitation that circumscribes the prosecutor's duty under Brady to disclose information favorable to the defense. The touchstone of materiality is a concern that the suppressed evidence might have affected the outcome of the trial. Accordingly, an individual alleging a Brady violation must demonstrate that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 559 (4th Cir. 1999) (internal quotation marks and citations omitted).

In the instant case, Plunkett maintains that Taylor's September 19, 2002, confession was an inconsistent statement that the government should have made available to him prior to trial. At trial, Taylor acknowledged that he was not completely candid with investigators initially in that he attempted to minimize his role in Wimbush's murder.

11

At first blush, it may appear that Plunkett has established a
Brady violation.  There can be no credible argument against the
assertion that Taylor's prior statements were favorable to Plunkett
and that they were not disclosed to him until just before the trial
commenced.  Moreover, because Taylor's initial statement was
inconsistent with his testimony at trial, Plunkett could use the
inconsistencies to impeach Taylor's credibility.  It is our
materiality analysis, however, that exposes the fatal flaw in
Plunkett's Brady claim.

After our exhaustive review of the record, we are convinced
that Taylor's September 19, 2002, statements were not material.
Stated differently, we are unable to find "that there is a
reasonable probability that, had the evidence been disclosed to the
defense, the result of the proceeding would have been different."
Id.

Pursuant to our examination, we observe that Taylor's
inconsistent statements were made known at trial.  Accordingly,
counsel for Plunkett was afforded the opportunity to cross-examine
Taylor about his prior inconsistent statements. We are thus unable
to fathom how the outcome of the trial might have been different
had Plunkett possessed the prior inconsistent statements earlier.
As noted by the government, any suggestion by Plunkett "that he
would have conducted a better cross-examination had Taylor's
pretrial statement been disclosed before trial does not establish

12

prejudice." (Appellee's Brief 17.) Accordingly, we will affirm the trial court on this issue.

## IV.

Plunkett also maintains that the district court erred in not granting a new trial on the basis that the government allegedly knew that it was educing false testimony in its cross-examination of Bodkins. More specifically, Plunkett alleges that the government misled the jury in that Bodkins' testimony inaccurately led the jury to believe that Bodkins was testifying solely for the purposes of doing the right thing and bringing comfort to the Wimbush family. As already noted, the district court's refusal to grant a motion for a new trial is reviewed for an abuse of discretion. Huggins, 191 F.3d at 536.

As stated above, for purposes of determining whether there is a Brady violation, we have found that the evidence is favorable if (1) it would exculpate the accused or (2) it could be employed to impeach a government witness. Ellis, 121 F.3d at 914; Bagley, 473 U.S. at 682. Moreover, it is well settled that an agreement or understanding between a government witness regarding future prosecution should be made known to the jury because such agreement or understanding goes to the credibility of that witness. Giglio v. United States, 405 U.S. 150, 154-55 (1972).

13

It is indisputable that the agreement between the government and Bodkins was "favorable" to Plunkett whereas it could be used to impeach Bodkins and bring into question his credibility. Nevertheless, Bodkins was not a government witness. Instead, he testified on his own behalf. Accordingly, Giglio does not require that the government disclose its plea negotiations with him.

Plunkett, however, argues that it is inconsequential whether Bodkins was a government witness or a witness testifying on his own behalf. Nevertheless, he has not set forth and we have not found any controlling authority to sustain his contention. We must therefore reject this argument.

Moreover, contrary to Plunkett's suggestion to the contrary, we are unable to find that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Spicer, 194 F.3d at 559. Stated differently we do not think that the evidence concerning Bodkins' negotiations with the government was material. Therefore, because a Brady violation occurs only when the government fails to disclose favorable material evidence, Brady, 373 U.S. at 87, we can find no Brady violation here.

Plunkett also contends that the government's failure to disclose its plea negotiations with Bodkins is violative of the principles set forth in Napue v. Illinois, 360 U.S. 264 (1959). To establish a constitutional violation under Napue, Plunkett must

14

prove that (1) Bodkins testified falsely, (2) the government was aware that Bodkins' testimony was false, and (3) Bodkins' testimony was material. See United States v. Mason, 293 F.3d 826, 828 (5th Cir. 2002).

From our examination of Bodkins' testimony, we are unable to find that he testified falsely. Although the government offered Bodkins a plea agreement for a term of life, he rejected the agreement. He hoped to obtain an offer for a term of years. Further, the jury was informed of the government and Bodkins' negotiations as well as Bodkins' desire that the government would file a motion for substantial assistance on his behalf. Hence, the jury was afforded this information on which they could judge Bodkins' credibility.

Finally, and as we have already observed, this evidence was not material for the reason that there is no reasonable likelihood that the jury verdict would have been different had it been made known to Plunkett earlier. Therefore, we find no reversible error here.

V.

Bodkins claims that the district court erred in not holding that the government's failure to file a motion pursuant to 18 U.S.C. § 3553(e) violated the terms of its proffer letter to Bodkins. Bodkins also asserts that the district court was in error

15

in not finding that the government's failure to make the § 3553(e) motion was based on Bodkins' race.

"We review a district court's findings regarding what the parties said or did for clear error, while principles of contract interpretation applied to the facts are reviewed de novo." United States v. Snow, 234 F.3d 187, 189 (4th Cir. 2000) (citations and internal quotation marks omitted). As to whether the government intentionally discriminated against a defendant on the basis of race, we review this issue for clear error. United States v. Lane, 866 F.2d 103, 106 (4th Cir. 1989).

Section 3553(e) of Title 18 of the United States Code provides, in relevant part, that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C.A. § 3553(e).

The government is allowed to refuse to make a substantial assistance motion except (1) for an unconstitutional motive such a race or religion or (2) where refusal is not rationally related to a legitimate government objective. Wade v. United States, 504 U.S. 181, 185 (1992).

The district court found that the government's reference to the races of the defendants amounted to "purely tactical

16

considerations for trial." (J.A. 1775.) The court also noted that Bodkins and Plunkett had "differing situations" and that the government ultimately offered Bodkins a plea agreement for a life term that he rejected. (J.A. 1775.) According to the trial court, there was no "meeting of the minds." (J.A. 1776.)

Bodkins claims that the trial court erred in deciding that the government's refusal to file or to consider filing a § 3553(e) motion was not violative of the terms of his proffer letter. This assertion is simply incorrect.

The letter provided that the government, "acting in [its] sole discretion will determine whether to enter into a plea agreement with you," and that the "proffer in no way binds the United States Attorney, nor does it constitute substantial assistance under the provisions of Sentencing Guideline 5K1.1 and Title 18, United States Code, Section 3553(e)." (J.A. 1292.) Therefore, considering that this letter grants sole discretion to the government to make a substantial assistance determination, we cannot find that the government violated the terms of the proffer letter by not filing a § 3553(e) motion. Bodkins' claims of fraud and bad faith are also unpersuasive.

Bodkins' argument that the trial court erred in not finding that the government racially discriminated against him in filing a § 3553 motion is equally unavailing. To prevail on this claim, Bodkins must show that similarly situated individuals of a

17

different race were treated differently. <u>United States v. Armstrong</u>, 517 U.S. 456, 465 (1996). This he cannot do.

Bodkins and Plunkett were not similarly situated. Bodkins was the one who (1) had actually shot and killed Wimbush, (2) had been convicted for robbery shortly after he killed Wimbush, (3) had shown no remorse for killing Wimbush, and (4) had attempted to get people to provide for him a false alibi in the case. (J.A. 1392-93.) Moreover, his criminal history was much more extensive than that of Plunkett. Thus, it was not error for the district court to determine that the government's decision to offer Plunkett a more favorable plea agreement than Bodkins was based on strategic reasons alone, and not race. Therefore, we will affirm the district court on this issue.


                              VI.

We have considered the remaining contentions set forth by Appellants, including those contained in Plunkett's supplemental brief, but find them to be without merit.


                              VII.

Therefore, in light of the foregoing discussion and rationale, the judgment of the district court is hereby

                                              <u>AFFIRMED</u>.


18