# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-31083

United States Court of Appeals
Fifth Circuit

**FILED**

September 14, 2017

Lyle W. Cayce
Clerk

consolidated with 16-31181

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

MARK ANTHONY THOMPSON,

> Defendant - Appellant

Appeals from the United States District Court
for the Western District of Louisiana
USDC No.  2:14-CR-74-1

Before STEWART, Chief Judge, and JONES and CLEMENT, Circuit Judges.

PER CURIAM:*

## INTRODUCTION

The defendant appeals his conviction for attempting to use a child to produce a visual depiction of sexually explicit conduct and attempting to entice a minor to engage in criminal sexual activity. He raises a host of issues on

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-31083

appeal.   For the reasons articulated below, we AFFIRM the judgment of the district court.

## BACKGROUND

In February 2013, Defendant-Appellant Mark Thompson and Rosalie Dornellas met at a casino in New Orleans and began an extramarital affair. Because Thompson's job involved frequent travel, the majority of Thompson and Dornellas's time was spent communicating through different platforms like text message, telephone, instant message, Skype, Viber, and video-chat.

Thompson frequently discussed with Dornellas his interest in sex with minor children.  He repeatedly asked Dornellas for a naked picture of her nine-year-old daughter, *see, e.g.*, and on multiple occasions expressed his desire to have sex with her daughter.  Dornellas sent Thompson pictures of her daughter wearing underwear.  In response, Thompson stated that her daughter was "a beautiful little whore. When I [have sex with] her it will be like [having sex with] you when you were her age because she looks so much like you." Thompson asked Dornellas if she could let him come to the house, introduce him to her daughter, and let him have sex with Dornellas and then "go and talk to [her daughter] in her room knowing I would talk to her about [having sex] because you want her to learn about sex so she can become a whore like us."  After Thompson had expressed sexual interest in her daughter, on one occasion, Dornellas allowed Thompson to speak to her daughter on the phone, though the content of their conversation was not sexual.

Thompson continued to ask Dornellas for more graphic pictures of her daughter, including pictures of her genitals.  Dornellas sent him a photo of Dornellas's underwear and he praised the clarity of the photo and stated "it's how I would like for the pic of [your daughter's vagina] to look."  In December 2013, Dornellas sent him a cell phone video of her daughter sleeping naked,

No. 15-31083

but covered by a blanket. But he became upset because the blanket covered her genitals.

The next day, upon discovering the videos and text messages between Dornellas and Thompson, Dornellas's daughter gave her mother's cell phone to her father, who notified the authorities. Within a few days, Detective Joshua Stanford from the police department interviewed Dornellas regarding the pictures. Dornellas communicated to Detective Stanford that her conversations with Thompson were mere "fantasy."

In April 2014, a grand jury charged Thompson and Dornellas with one count of attempting to use a child to produce a visual depiction of sexually explicit conduct in violation of 18 U.S.C. § 2251(a), and additionally charged Thompson with one count of attempting to entice a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2242(b). On June 2, 2014, Dornellas met with a psychologist, Dr. Margot Hasha, and reiterated that she believed Thompson only fantasized about having sex with her daughter, but would not actually act upon it. Dr. Hasha created a medical report based on their discussion and noted this statement. Dr. Hasha found that Dornellas exhibited symptoms of major depression and PTSD, and she had "difficulty understanding concepts and exhibited a level consistent with the cognitive development of a 6 or 7 year old, meaning that she could only comprehend and explain things in a very concrete way." In August, Dornellas pled guilty to the § 2251(a) count and agreed to assist the government in its case against Thompson.

At his trial, Thompson claimed that he fantasized about having sex with Dornellas's daughter, but would not have acted on that fantasy. Dornellas testified against Thompson and opined that Thompson would have had sex with her daughter if she had permitted it. She testified that she had previously attempted to "cover" for Thompson with Detective Stanford because she loved

him. Thompson extensively cross-examined Dornellas on this statement and her former statement to Detective Stanford. Nevertheless, Thompson was ultimately convicted on both counts. He was sentenced to concurrent 360 month terms of imprisonment on both counts, followed by 10 years of supervised release. The district court denied Thompson's motion for a new trial.

## DISCUSSION

Thompson raises several issues on appeal. He challenges the district court's denial of his motion for a new trial, asserts *Brady*, *Napue*, and *Giglio* claims, challenges the district court's exclusion of expert testimony and the sufficiency of the evidence to support his convictions, and claims that the district court exhibited impermissible bias against him.

### A. Motion for New Trial

Thompson contends that his constitutional rights were violated when the district court did not admit into evidence Dr. Hasha's medical report and when the government allowed Dornellas to testify contrary to her previous statements made to Detective Stanford and Dr. Hasha. Thompson asserts that Dr. Hasha's medical report should have been admitted because it includes information on Dornellas's mental health that would have undermined her credibility. He also asserts that because her statements to Dr. Hasha and Detective Stanford, that she thought Thompson was only fantasizing about having sex with her daughter, were exculpatory, her contrary testimony at trial violated the government's duties under *Napue* and *Brady*. Thompson argues that he is entitled to a new trial.

We review the district court's denial of a motion for a new trial for abuse of discretion. *United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001). "Motions for new trial based on newly discovered evidence are disfavored and reviewed with great caution." *United States v. Wall*, 389 F.3d 457, 467 (5th

Cir. 2004) (internal quotations omitted). To obtain a new trial based on newly discovered evidence, a defendant must prove: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal." *Id.* Dr. Hasha's medical report was not newly discovered evidence because Thompson was aware of the report at the time of trial. Indeed, Thompson filed a motion to compel production of Dornellas's mental health records before trial, and during trial the district court denied the motion.

Thompson is also not entitled to a new trial under *Napue* or *Brady*. A new trial based on *Napue* is proper only if the defendant demonstrates that (1) the testimony was actually false; (2) the testimony was material; and (3) the prosecution knew that the testimony was false. *United States v. Stanford*, 823 F.3d 814, 838–39 (5th Cir. 2016); *United States v. Webster*, 392 F.3d 787, 801 (5th Cir. 2004). Thompson has not demonstrated that Dornellas's testimony at trial was false. Dornellas's communications with Detective Stanford and Dr. Hasha do not make her later incriminating testimony false, since she had a motivation to cover for Thompson before she pled guilty. Thompson's explicit text messages to Dornellas also corroborate her trial testimony that this was not merely his fantasy. Thompson therefore has failed to establish that Dornellas's testimony was actually false in violation of *Napue*.

A *Brady* violation occurs when the government suppresses evidence "favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1197 (1963). Evidence is material only when there is a "reasonable probability"

that the outcome of the trial would have been different if the evidence had been disclosed to the defense. *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985). Whether evidence is material "depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004). Because the district court reviewed Dr. Hasha's report *in camera*, we review the potential *Brady* material only for clear error. *United States v. Brown*, 650 F.3d 581, 589 (5th Cir. 2011). A district court's finding is clearly erroneous when, viewing all of the evidence, we are left with a "definite and firm conviction that a mistake has been committed." *Id.* (internal quotations omitted).

Thompson has not shown that the district court clearly erred in excluding Dornellas's mental health report, nor do we have a firm conviction that Dornellas's statement to Dr. Hasha would have changed the outcome of the trial. In arriving at its guilty verdict, the jury relied on voluminous additional evidence including texts from Thompson, not solely the testimony of Dornellas. *See Sipe*, 388 F.3d at 478 ("When the testimony of the witness who might have been impeached by the undisclosed evidence is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence generally is not found to be material."). Further, for witnesses like Dornellas, "whose mental history is less severe, district courts are permitted greater latitude in excluding records." *United States v. Jimenez*, 256 F.3d 330, 344 (5th Cir. 2001). Accordingly, the new trial motion was properly denied.

No. 15-31083

## B. Plea Agreement

Thompson contends that the government misled the jury in allowing Dornellas to testify, without clarification, that she was facing at least 15 years in prison, despite a potential lesser sentence in her plea agreement.  Thompson asserts that the government's failure to clarify her plea deal constitutes a violation of *Napue, Brady,* and *Giglio*.  *Id.*  Because Thompson did not raise this argument in the district court, we review it for plain error.  *See United States v. Williams*, 821 F.3d 656, 657 (5th Cir. 2016); *United States v. Scroggins*, 379 F.3d 233, 258 (5th Cir. 2004), *cert. granted, judgment vacated on other grounds*, 543 U.S. 1112, 125 S. Ct. 1062, 160 L. Ed. 2d 1049 (2005).  To demonstrate plain error, (1) there must be an error, (2) that is plain, and (3) that affects substantial rights.  *United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir. 2003).  The error must also seriously affect the fairness, integrity, or public reputation of judicial proceedings.  *Id.*

The government cannot knowingly present or fail to correct false testimony.  *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763 (1972); *Napue v. Illinois*, 360 U.S. 264, 271, 79 S. Ct. 1173 (1959).  To prove a due process violation, the appellant must demonstrate (1) false testimony from the witness (2) that the government knew was false and (3) that is material. *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002). The government also cannot suppress material impeachment evidence. *Brady*, 373 U.S. at 87, 83 S. Ct. at 1197.

At trial the government stipulated that under the plea agreement, it could file a motion under 18 U.S.C. § 3553(e) to request a sentence below the statutory minimum.  The government also entered Dornellas's plea agreement into evidence.  The government did not suppress or misrepresent the terms of the plea agreement.  The district court therefore did not err, much less, plainly err.

Thompson next asserts that the cumulative effect of the government's alleged misrepresentations of Dornellas's plea agreement, Dornellas's excluded statement regarding Thompson's fantasy, and the district court's failure to admit the medical report, constitutes a due process violation entitling Thompson to a new trial. Since none of these arguments establishes a due process violation, their net effect similarly does not create a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. *See Kyles v. Whitley*, 514 U.S. 419, 438, 115 S. Ct. 1555, 1568 (1995).

### C. Expert Testimony

Thompson contends that the district court abused its discretion when it excluded Dr. Jennifer Weeks's expert testimony and report on sexual addiction. The district court reasoned that Dr. Weeks's research had not been subject to sufficient peer review.

This court reviews the district court's exclusion of expert testimony for abuse of discretion. *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 369 (5th Cir. 2016). A district court has "wide latitude in determining the admissibility of expert testimony," and its "decision will not be disturbed on appeal unless manifestly erroneous." *Id.* (internal quotations and citations omitted). Under *Daubert*, the "subject of the expert's testimony must be 'scientific []knowledge.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90, 113 S. Ct. 2786, 2795 (1993). This implies a "grounding in the methods and procedures of science" and "more than subjective belief or unsupported speculation." *Id* at 590. For an assertion to qualify as scientific knowledge, "an inference or assertion must be derived by the scientific method." *Id.* There must be a "standard for evidentiary reliability" or a "process for proposing and refining theoretical explanations." *Id.*

No. 15-31083

Thompson has not convinced us that the district court improperly excluded Dr. Weeks's testimony. Dr. Weeks is a licensed counselor who specializes in sexual addiction. She assessed Thompson and created a report, which concluded that Thompson's behavior was more consistent with fantasy than grooming behavior. During the *Daubert* hearing, Dr. Weeks testified that she performed a sexual addiction screening test that revealed Thompson might be hypersexual. But Dr. Weeks acknowledged that the screening test is not well studied and does not have a validity scale. The self-reporting test enables subjects to over-report or under-report. The error rate of the test could place Thompson in a parameter in which there is no basis to conclude he is sexually addicted, or could place him within a parameter in which there is a high likelihood that he is a sexual addict. It is also revealing that sexual addiction was removed from The Diagnostic and Statistical Manual of Mental Disorders ("DSM")'s list of disorders.[1] Unlike other conditions, the updated DSM-5 has not even listed sexual addiction as a disorder warranting further study for potential inclusion in the DSM. Thompson has therefore not shown that Dr. Weeks's testimony establishes a standard of evidentiary reliability or is grounded in the methods and procedures of science. *Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795. The district court did not abuse its discretion.

---

[1] The DSM is published by the American Psychiatric Association and is the "guiding force" used by clinicians and psychiatrists to diagnose psychiatric illnesses. The DSM-5 is the most updated version of the DSM.

**D. Sufficiency of the Evidence**

Thompson argues that the evidence is insufficient to sustain both of his convictions.   Thompson preserved his challenge to the sufficiency of the evidence by moving for acquittal under Fed. R. Crim. Proc. 29 at the conclusion of the government's case and again at the close of all evidence.  Our review is therefore de novo. *United States v. Ongaga*, 820 F.3d 152, 157 (5th Cir. 2016). This court reviews the sufficiency of the evidence in the light most favorable to the government, with all reasonable inferences drawn in support of the verdict. *Id.* "We will affirm the jury's verdict if we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

Thompson was convicted of attempting to use a child to produce a visual depiction of sexually explicit conduct in violation of 18 U.S.C. § 2251(a) and attempting to entice a minor to engage in criminal sexual activity in violation of 18 U.S.C. § 2242(b).  "To prove attempt, the government must demonstrate that the defendant (1) acted with the culpability required to commit the underlying substantive offense, and (2) took a substantial step toward its commission." *United States v. Barlow*, 568 F.3d 215, 219 (5th Cir. 2009).  This court has defined a "substantial step" as "conduct which strongly corroborates the firmness of [the] defendant's criminal attempt." *Id.*

To prove a violation of § 2251(a), the government must show that Thompson employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.   18 U.S.C. § 2251(a); *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012).  The government correctly notes that Thompson fails to discuss or cite to any trial evidence in support of his contention that the evidence supporting this crime was insufficient. Consequently, there is no basis on which to question whether a reasonable trier

of fact could find that the evidence established Thompson's guilt beyond a reasonable doubt.  Moreover, viewing the evidence in the light most favorable to the government leaves little doubt of its sufficiency to support his conviction for attempted use of a child to produce a sexually explicit visual depiction.

To prove a violation of § 2242(b), the government must prove beyond a reasonable doubt that Thompson intended to "persuade[ ], induce[ ], entice[ ], or coerce[ ]" Dornellas's daughter to engage in any sexual activity.  *Barlow*, 568 F.3d at 219. Thompson claims that he only engaged in obscene speech.

But Thompson described to Dornellas his desire to have sex with her daughter and repeatedly asked her to send him a naked picture of her daughter, which he ultimately received.  He also discussed coming over to Dornellas's house and talking to her daughter about having sex, "so that she can become a whore like us."  On one occasion, he even spoke with her daughter on the phone after he had told Dornellas he was interested in having sex with her daughter.  This was all done in an attempt to entice Dornellas to allow him to have sex with her daughter.  All of these actions support that Thompson not only intended to engage in sexual acts with a minor, but also took substantial steps toward committing this offense. *See United States v. Broussard*, 669 F.3d 537, at 547 (upholding a conviction under § 2242(b) where the defendant asserted he was engaging in "all fantasy" and "just talk").

**E. Judicial Bias**

Lastly Thompson contends that the district judge exhibited bias when she abruptly took recesses at various points throughout the trial and commented that certain lines of questioning were "uncomfortable."  Thompson also complains of the judge's statements during Dornellas's sentencing hearing that this case was more disturbing than a case she had formerly prosecuted involving the killing of a child.  The district court denied Thompson's motion for recusal.

No. 15-31083

This court reviews denial of a motion for recusal for abuse of discretion. *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003). Judicial opinions "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994). Judicial remarks that are critical, disapproving of, or even hostile, normally do not support a bias or partiality charge. *Id.*

The judge's conduct did not demonstrate bias or partiality. The district court's remarks during trial that the subject matter is uncomfortable does not evince bias. Likewise, the judge's expression of her opinion that this case is more disturbing than a former case was not stated in front of the jury, and therefore had no impact on the guilty verdict. Moreover, the district court is permitted to express critical or disapproving remarks. *See id.* Finally abruptly calling for a recess does not imply a deep-seated antagonism. *See id.*

## CONCLUSION

Appellant's conviction and sentence are **AFFIRMED**.

12