# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70013

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2017

Lyle W. Cayce
Clerk

MARK ROBERTSON,

> Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-728

Before CLEMENT, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Mark Robertson applies for a certificate of appealability ("COA") to appeal the denial of his federal petition for a writ of habeas corpus. He claims that his death sentence was based on materially inaccurate evidence from the State's witness, Warden Melodye Nelson. For the reasons that follow, we deny a COA.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-70013

**I**

Mark Robertson was convicted and sentenced to death in 1991 for the murder of Edna Brau in the course of committing a robbery in Dallas County, Texas. The Texas Court of Criminal Appeals ("TCCA") affirmed Robertson's conviction on direct review. *Robertson v. State*, 871 S.W.2d 701, 714 (Tex. Crim. App. 1993). Robertson's first attempts at state and federal habeas relief were unsuccessful; however, the TCCA ultimately granted him a new punishment hearing under *Penry v. Johnson*, 532 U.S. 782 (2001). *See Robertson v. State*, No. AP-71,224, 2011 WL 1161381, at *1 (Tex. Crim. App. Mar. 9, 2011). At Robertson's second sentencing proceeding, the State submitted multiple confessions and other evidence to establish that Robertson was a future danger to society. The TCCA summarized the evidence as follows:

> The State presented evidence of other offenses and bad acts, including evidence that [Robertson], as a young teenager, brought a gun to school and threatened to shoot other students. [Robertson] had strangled cats and had stomped birds to death. He had also committed armed robbery and a wide variety of drug-related offenses. While he was on deferred adjudication for an aggravated robbery, [Robertson] killed 7-Eleven store employee Jeffrey Saunders.

*Id.* (footnotes omitted).

The State also relied on its witness, Warden Melodye Nelson. She testified about the prison's classification system, which ranges from G1 (least restrictive) through G5 (most restrictive), and administrative segregation. Warden Nelson testified that an inmate convicted of capital murder who received a life sentence *with* the benefit of parole, or who received a sentence of 50 years or greater who has not served a minimum of ten years of that sentence, would be classified as a G3 prisoner. She further explained that once an inmate has served ten years of that sentence, he may be promoted to G2 status. Warden Nelson testified that Robertson, who had served 18 years and

2

had only minor infractions, would be in the pool to receive the "automatic promotion" to G2 status. Warden Nelson testified that prison employees are underpaid and the prisons are under-staffed. She also stated that she believed that the year prior, the prison system was under-staffed by nearly 4,000 correctional officers. She explained the prison's system for tracking the whereabouts of inmates. As to Robertson specifically, she testified to the minor prison infractions which Robertson violated, and she stated that the incidents of prison violence were more common in general population than in administrative segregation or death row. After considering the evidence, the jury sentenced Robertson to death. *Id.*

Robertson filed a motion for a new trial on the grounds that some testimony from the State's witness was false and misleading. At the motion hearing, the Assistant District Attorney first brought to the court's attention new information regarding certain testimony from Warden Nelson, given in a different trial. The State also informed the court that it had turned over the information to defense counsel. Relevantly, the State informed the court that Warden Nelson testified in a different trial that prisoners sentenced to life *without* parole could be eligible for G2 prison status. After the trial, however, Warden Nelson learned that capital offenders who receive a life without parole sentence can never receive a prison status below G3. Both the prosecutor and defense counsel acknowledged, on the record, that Robertson would not have been eligible for a life without parole sentence, so a rule prohibiting a life-sentenced inmate from receiving a less-restrictive classification did not apply to Robertson. After considering Robertson's evidence, including the testimony from his expert, S.O. Woods, Jr., the court ultimately denied Robertson's motion for a new trial.

No. 17-70013

On appeal, the TCCA affirmed the sentence. *Id*. The TCCA again denied Robertson's renewed petition for state habeas relief. *Ex Parte Robertson*, No. WR-30,077-03, 2013 WL 135667 (Tex. Crim. App. Jan. 9, 2013).

Robertson returned to federal court and filed a petition for writ of habeas corpus, which was denied. In his petition, Robertson made two claims for federal habeas relief,[1] only one of which is relevant to this court: whether his death sentence was based on materially inaccurate evidence.  The district court construed this claim as a Due Process claim. Robertson asserted five matters to which the State's witness, Warden Nelson, had testified as grounds for relief: (1) Robertson would automatically enter the prison system at a G3 level prisoner; (2) prison personnel were underpaid and prisons were short-staffed; (3) there was more violence in general population than in administrative segregation; (4) inmates are free to travel to and from their cells;[2] and (5) prisons are filled with psychopaths. *Robertson*, 2011 WL 1161381, at *7–10. Robertson relied on his expert, Woods, to prove the falsity of Warden Nelson's testimony at the hearing on his motion for a new trial. The district court concluded that Robertson's expert failed to present hard evidence or statistics that contradicted Warden Nelson's testimony on any matter. Rather, Woods expressed that he disagreed with certain word choices and merely indicated that he thought Warden Nelson was inaccurate. Importantly, Woods never accused Warden Nelson of perjury. Accordingly, the district court denied

---

[1] Robertson also asserted that trial counsel failed to adequately investigate and develop mitigating evidence. The district court dismissed the claim as unexhausted and procedurally barred, and alternatively, denied it for lack of merit notwithstanding any failure to exhaust. Robertson does not raise this issue in his motion for a COA.

[2] The district court classified ground four, from those listed above, as: "a year ago the Texas Department of Criminal Justice was 4,000 correctional officers short." However, the fourth ground the TCCA reviewed was whether inmates can come and go from their cells to work. *Robertson*, 2011 WL 1161381, at *9. We will address the testimony regarding whether the prison system was under-staffed with ground two and address the inmates' freedom to travel to and from their cells as ground four.

Robertson's claim that his sentence was based on inaccurate, material evidence in violation of the Constitution.

In addition to the five areas of concern that Robertson raised in his state habeas petition, the district court recognized that Robertson asserted two additional concerns: (1) Warden Nelson's false testimony in a different trial that affected her credibility in his trial—a credibility issue that was never raised to the jury in his trial—and (2) Warden Nelson testified to a "parade of horribles"—*i.e.*, examples of Robertson's alleged misconduct, such as altering a coffee pot to produce boiling water that could be used to scald a guard and breaking headphone wires to transmit alleged gang behavior—with no evidence to support the misconduct allegations. The district court determined that, as to these new allegations, "Robertson argues only that the state court's decision was unreasonable under § 2254(d)." The district court limited itself to the § 2254(d) inquiry and determined that it could not consider the new evidence and arguments because they were not submitted to the TCCA on appeal. *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) ("Provisions like §§ 2254(d)(1) and (e)(2) ensure that federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." (internal quotations and alterations omitted)). Alternatively, the district court determined that Robertson's new allegations lacked merit because Robertson failed to show that Warden Nelson's inaccurate testimony in a different trial would have affected or been relevant to her testimony in Robertson's trial. Robertson's second new allegation also lacked merit, the district court held, because he failed to establish that Warden Nelson's testimony about his "parade of horribles" was

false or misleading.[3] The district court therefore denied Robertson relief on his two new issues.

Robertson timely appealed the district court's denial of his petition for writ of habeas corpus. He seeks a COA on his second claim, relating to the alleged material, false information upon which his death sentence was based.

## II

"[W]hen a habeas corpus petitioner seeks to initiate an appeal of the dismissal of a habeas corpus petition . . ., the right to appeal is governed by the certificate of appealability (COA) requirements." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Section 2253 of the Antiterrorism and Effective Death Penalty Act addresses appeals of denials of habeas corpus petitions and provides that an "appeal may not be taken" from a final order in a habeas corpus proceeding without a COA. 28 U.S.C. § 2253(c)(1). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial

---

[3] Robertson also takes issue with the TCCA's characterization of these alleged infractions as "minor." The district court determined that Robertson's complaint about the TCCA's characterization failed to establish that the TCCA unreasonably determined that Warden Nelson's testimony was not false or misleading; thus, Robertson's claim lacked merit.

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

### III

Robertson asserts that the district court erred in holding that Warden Nelson's testimony was not false or misleading, but rather a mere disagreement between experts that is not normally sufficient to demonstrate falsity. "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Id.* To prove a due process violation under *Napue*, Robertson must establish that: (1) the testimony was false, (2) the government knew the testimony was false, and (3) the testimony was material. *See Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005) (citing *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002)).

### A. *Robertson would be classified as a G3 inmate*

Warden Nelson testified at Robertson's punishment trial that if Robertson were sentenced to life with parole, he would be classified as a G3 inmate. However, because Robertson had served more than 10 years of the sentence and because he had only minor disciplinary infractions during his time on death row, Robertson would "automatically be categorized as a G2 if given a life sentence." *Robertson*, 2011 WL 1161381, at *7. Robertson relied on Woods to refute Warden Nelson's classification during the hearing on Robertson's motion for a new trial. *Id.* at *8. Woods, however, only indicated that he "disagreed with Warden Nelson's use of the word 'automatic,' stating that it 'was not a good choice of words.'" *Id.* Although Woods disagreed with Warden Nelson's word choice, "the evidence indicate[d] that [Robertson] was

eligible for G2 status if given a life sentence." *Id.* As the district court found, the state court's determinations appear to be correct. The district court correctly held that Woods's mere disagreement with Warden Nelson's language was not enough to show that the state court unreasonably determined that Warden Nelson's testimony was not false or misleading. *See Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996).

*B. Prison personnel are underpaid and under-staffed*

Warden Nelson testified that prison employees are underpaid, that there is rapid turnover, and that there is under-staffing to the point where one staff member may be in charge of up to 150 offenders. *Robertson*, 2011 WL 1161381, at *8. In response, Woods testified that his investigation did not indicate that there would have ever been one guard supervising 150 inmates as a typical situation. *Id.* He further stated that the complexity of the prison system makes it nearly impossible to establish a sound guard-to-inmate ratio. *Id.* Because Woods did not present concrete evidence to refute Warden Nelson's testimony, the district court agreed with the TCCA that the jury would not have been misled or misinformed by the Warden's testimony. *See id.*

*C. General population is more violent than administrative segregation*

Warden Nelson testified at trial that the general population had more incidents of violence than administrative segregation or death row. *Id.* at *9. Although Woods testified that it is "common sense" that inmates on administrative segregation are more dangerous, there is a higher opportunity for violent incidents in general population simply because there are more inmates in general population. *Id.* Woods ultimately "conclud[ed] that the warden's testimony did not give a false impression about the amount or nature of violence in prison." *Id.* The district court necessarily could not have erred in agreeing with the TCCA that the Warden's testimony on this issue was not

false or misleading when Robertson's own expert *agreed* with the Warden. *See id.*

## D. *Inmates' ability to come and go from their cells to work*

At trial, Warden Nelson thoroughly described the process used for an inmate to travel from his cell to his respective job. *See id.* at *9–10. She explained that each inmate was accounted for before leaving his cell and then accounted for again by his job supervisor. *Id.* She testified that each inmate was accounted for "eight times in a 24-hour period." *Id.* at *9. When Woods testified on this issue, his testimony nearly mimicked that of Warden Nelson's. *Id.* at *10. The district court correctly relied on the TCCA's determination that Woods's testimony was "substantially identical to that presented by the warden at trial." *Id.* Accordingly, Robertson failed to establish that the jury relied on inaccurate information presented by Warden Nelson.

## E. *Prison filled with psychopaths*

As the TCCA aptly summarized, defense counsel objected to a document on relevance, arguing "that the law requires individualized punishment and . . . appellant can't help it if there are a bunch of psychopaths in prison." *Id.* (internal quotations and alteration omitted). The court sustained the defense's objection. *Id.* Later in Warden Nelson's examination, the prosecution brought up the defense counsel's comment about prison being filled with psychopaths. *Id.* Warden Nelson stated that she remembered the characterization, and when the prosecution asked if she agreed, Warden Nelson replied, "Yes, sir." *Id.* Robertson relies on Woods's testimony, "that it would be inaccurate to say that every inmate is a psychopath," as evidence that Warden Nelson provided false testimony. *Id.* But, Woods agreed "that there are probably more psychopaths in prison." *Id.* The district court agreed with the TCCA that Woods's testimony does not demonstrate that Warden Nelson's testimony was false or misleading to the jury. *Id.* In fact, Woods's testimony, that it would be

inaccurate to characterize all inmates as psychopaths, is irrelevant to Warden Nelson's testimony—she never even offered such testimony. *See id.* Accordingly, the district court did not err in denying habeas relief on this issue.

*F. Robertson's two new claims*

The district court correctly noted that because Robertson failed to present two of his assertions—the warden's inaccurate testimony in a different trial as evidence she was unreliable and the warden's speculations as to his conduct violations—to the TCCA on direct appeal, these claims are barred from consideration by the federal courts through his habeas petition. *Cullen v. Pinholster* established that § 2254 "imposes a limitation on the discretion of federal habeas courts to [consider] new evidence." 563 U.S. at 185. The record supports the district court's determination that it could not consider these two new grounds for relief.[4]

## IV

For the reasons explained above, Robertson failed to demonstrate that the district court erred in determining that the TCCA reasonably concluded that Warden Nelson's testimony was not false or misleading. Reasonable jurists would not find the district court's determination debatable or wrong, *see*

---

[4] The district court also considered the new claims on the merits, as alternative grounds upon which to deny habeas relief. First, the district court determined that Robertson failed to demonstrate how Warden Nelson's inaccurate testimony would have been relevant and admissible to impeach her in Robertson's case. Thus, the court found the claim lacked merit. On appeal Robertson contends that he wanted to use her inaccurate testimony as evidence that she was an unreliable witness. In response, the State contends that Robertson's argument fails because impeachment evidence does not form the basis for a claim of false testimony. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972). We refrain from reaching the merits of this argument because it was not properly raised before the state court. *See Pinholster*, 563 U.S. at 185–86.

Second, the district court determined that Robertson did not exhibit how Warden Nelson's testimony regarding his disciplinary infractions was in any way false or misleading. He presents no evidence to demonstrate that her testimony regarding the infractions was inaccurate and does not indicate where his expert, Woods, contradicted the Warden's testimony on this issue. Again, we need not reach the merits of this argument. *See id.*

*Slack*, 529 U.S. at 484, and mere disagreement between experts is insufficient to show that testimony is false or misleading. *See Boyle*, 93 F.3d at 186. Accordingly, Robertson's petition for a COA is DENIED.